*571
 
 Mr. Justice SWAYNE,
 

 having referred to the statutes and recapitulated the facts bearing on the case, delivered the opinion of the court.
 

 The appellants have assigned in this court various errors.
 
 *
 

 We shall consider the several propositions which they state without specifically enumerating them.
 

 The United States granted the lauds to the State for a specific purpose. That purpose was “to aid in the construction of railroads” upon the routes designated. The land was made “ subject to the disposal of the legislature for the purpose aforesaid, and no other.” Congress prescribed certain safeguards to secure their application to the construction of the roads, and to prevent failure, or diversion. The precautions were few and simple. Except as to the first one hundred and twenty sections, the power of sale was to attach only as the road was completed in successive sections of twenty miles each. Subsequently the extent of the sections and the quantity of land were reduced one-half If the entire road was not completed within the time limited, no further sales were to be made, and all the unsold land was to revert to the United States. Subsequently the reverter was limited to the lands to which the right to sell had not attached. In other words, it was confined to those where the title was inchoate only, and had no application to those where the title was complete. As to those of the former class, there was not, when the bill was filed, and is not now, any default. If the fact were otherwise, it would be for the United States, by office found, or other proper proceeding, to assert their rights. But they do not complain, and the complainants cannot do it vicariously for them.
 
 †
 
 It is a conclusive answer to the proposition we are considering that the United States have no more claim, legal or equitable, touching the lands here in question than they have to lands which they have sold and patented to others in the regular course of the administration of the land department of the government; and that Congress has not seen
 
 *572
 
 fit, either expressly or by implication, to impose any restriction upon the taxing power of the State. That subject was remitted, as, under the circumstances, it might well be, wholly to her wisdom and discretion.
 

 The State accepted the grant subject to all the conditions prescribed. She thereupon became the agent and trustee of the United States. The powers and duties with which she was clothed might all have been discharged by private individuals. The characters of sovereign and trustee were united in the same party. The State did not in any wise abdicate her sovereignty by accepting the trust, but the former might be exercised to render more effectual the discharge of the latter. She was in no wise fettered, except as she had agreed to fulfill all the terms and conditions which accompanied the grant. To that extent she was clearly bound, and anything in conflict with those conditions would be
 
 ultra vires
 
 and cannot be supported. What were the terms to which she submitted herself? She was to devote the lands to the accomplishment of the object which Congress had in view, and there was an implied agreement on her part to take all the measures reasonably within her power to make their application effectual to that end. The mode was left entirely to herself. We see no ground upon which it can be claimed she bound herself any further. Upon general principles she could not tax the land while .the title remained in the United States, nor while she held them as the trustee of the United States, which, in the view of the law, was the same thing. But when the State, proceeding in the execution of the trust, had transferred her entire title to the company, and they had perfected their title and acquired the right to sell, the case assumed a very different aspect.
 

 The validity of the mortgages is not drawn in question, and is too clear to be doubted. We need not, therefore, consider that subject. When the mortgages were executed the complainants took the legal title, so far as the company held by that title, and the equitable or inchoate title of the company to the residue of the lands. Copies of the mort
 
 *573
 
 gages are not attached to the bill, and we are not advised particularly of their contents. If they contain a covenant of warranty, the legal title, as fast as it was acquired by the company, inured to the mortgagees.
 
 *
 

 If there was no warranty, and the
 
 land,
 
 and not the
 
 title,
 
 of the company was conveyed, the company is barred by estoppel from setting up the after-acquired title, and the estoppel runs with the land. The result is the same as if there had been a warranty.
 
 †
 

 When the grant was made by the State to the company, the entire title before held by the former passed to the latter. Nothing remained to the State but the performance of the remaining duties of the trust, without any title, present or potential, to the lands.
 

 Forbearance to tax was a bounty voluntarily given by the State. Forbearance for a time doubtless increased to some extent the value of the lauds. Never to tax would have increased their value still more.
 
 ‡
 
 There is no foundation for a claim for one more than for the other. The State, in the act accepting the grant, agreed
 
 su& sponte,
 
 to forbear to tax for seven years. There is no complaint that this stipulation has been violated. Any obligation, legal or equitable, to do more in this way is wanting.
 

 The company, so far as the matter of right is concerned, were upon a footing with all other alienees of the United States. The imposition of taxes can in no just sense be said to be a diminution of the value of the lands.
 
 §
 
 If Congress had thought so, they would have forbidden it. Liability to taxation is an incident to all real estate. Exemption is an exception. When claimed, to be effectual it must be clearly made out.
 

 The proposition founded upon the twentieth section of the act of the legislature of the 14th of February, 1857, is un
 
 *574
 
 sound. There are several answers. We shall state but one of them. That section imposes a tax with reference to the railroad itself. It has no relation to the lands owned by the company not used nor necessary in operating the road. The lands of the class of those here in question doubtless were not present to the mind of the legislature when that section was framed. The language employed cannot receive the comprehensive construction contended for.
 
 *
 
 The subject of taxing the lands of the company had already been dealt with. The seventh section of the act provided that they should not be taxed for seven years from the 1st of September, 1857. It would have been a solecism to exempt them for seven years and in the same act to exempt them without limit of time. Our view gives harmony and symmetry to the two provisions. Where such an exemption is claimed, the language from which it is alleged to arise is always to be strictly construed.
 

 This provision for exemption was by the clearest implication an assertion by the State
 
 in limine
 
 of the power to tax. The subsequent exemption involves the like claim.
 

 The provision of the thirty-seventh section of the act of1 1871, exempting the lands specified from local taxation until three years from the 1st of April, 1871, which period has not elapsed, was not a contract. There was no consideration. The company was required to do nothing, and did nothing in return. As between individuals the stipulation would belong to the category of
 
 nude pads.
 
 It has no higher character because one of the parties was a State, the other a corporation, and it was put in the form of a statute. It was the promise of a gratuity spontaneously made, which might be kept, changed, or recalled at pleasure. The case of
 
 Christ Church Hospital
 
 v.
 
 The County of
 
 Philadelphia
 
 †
 
 is
 
 *575
 
 instructive upou this subject. In 1883 the legislature of Pennsylvania passed an act declaring “that the real property, including ground-rents, now belonging to Christ Church Hospital, in the city of Philadelphia, so long as the same shall continue to belong to said hospital, shall be and remain free from taxes.” In 1853 a law was passed which subjected the ground-rents to taxation. The Supreme Court of the State sustained the validity of the latter act. The hospital removed the case, by a writ of error under the twenty-fifth section of the Judiciary Act of 1789, to this court. Here it was insisted that the act of 1833 was a contract in perpetuity, and the contract clause of the Constitution of the United States was invoked for its protection. This court unanimously affirmed the judgment of the Supreme Court of the State.
 

 The taxing power is vital to the functions of government. It helps to sustain the social compact and to give it efficacy. It is intended to promote the general welfare. It reaches the interests of every member of the community. It may be restrained by contract in special cases for the public good, where such contracts are not forbidden. But the contract must be shown to exist. There is no presumption in its favor. Every reasonable doubt should be resolved against it. Where it exists it is to be rigidly scrutinized, and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require. It is in derogation of public right, and narrows a trust created for the good of all.
 
 *
 

 Whether under the constitution of Michigan the State can impose taxes other than those which are specific upon the Flint and Pfcre Marquette Company, is a question which in this case does not arise. The taxes involved in this controversy were not to be upon the corporation, nor
 
 *576
 
 upon property used in the exercise of its franchises, but upon lauds which it bad mortgaged and was holding for sale. The distinction and the consequences have been considered. We need say nothing further upon the subject.
 

 We think the demurrer was necessarily sustained, and the hill properly dismissed.
 

 Decree affirmed.
 

 *
 

 See them set out as made,
 
 supra,
 
 pp. 542-3. — Rep.
 

 †
 

 Baker
 
 v.
 
 Gee, 1 Wallace, 333.
 

 *
 

 Bank of TJtica
 
 v.
 
 Masereau, 3 Barbour’s Chancery, 367.
 

 †
 

 Van Rensselaer
 
 v.
 
 Kearney et al., 11 Howard, 323.
 

 ‡
 

 New Jersey
 
 v.
 
 Wilson, 7'Cranch, 164.
 

 §
 

 Burlington and Missouri Railroad Company
 
 v.
 
 Hayne, 19 Iowa, 143.
 

 *
 

 Vermont Central Railroad Co.
 
 v.
 
 The Town of Burlington, 28 Vermont, 193; The State v. The City of Newark, 1 Dutcher, 315; The Inhabitants of Worcester
 
 v.
 
 The Western Railroad Corporation, 4 Metcalf, 564; The State v. Plavell & Fredericks, 4 Zabriskie, 370
 

 †
 

 24 Howard, 301.
 

 *
 

 Providence Bank
 
 v.
 
 Billings, 4 Peters, 561; Philadelphia Railroad Co.
 
 v.
 
 Maryland, 10 Howard, 393; Jefferson Branch
 
 v.
 
 Skelly, 1 Black, 447; Delaware Railroad Tax, 18 Wallace, 225.