## Asylum *v.* New Orleans.

An institution in the city of New Orleans for the relief of destitute females and helpless children of all religious denominations was incorporated April 29, 1853, by an act of the General Assembly of the State of Louisiana, which declares that from and after its passage all the property, real and personal, belonging to the institution "is hereby exempted from all taxation either by the State, parish, or city in which it is situated, any law to the contrary notwithstanding." By means of donations the institution erected an asylum, and has always fulfilled the objects for which it was established. In the year 1874 certain property — a cotton-press — was devised to it, the revenues of which have been faithfully applied to enable it to carry on its work. Under a statute enacted in pursuance of article 118 of the State Constitution of 1868 (*infra*, p. 364), the city in 1876 imposed upon that property a tax, the validity of which was sustained by the court below. *Held*, 1. That imposing the tax without granting any compensation or indemnity was not a legitimate exercise of the power of dissolving corporations which is reserved in a provision of the Code of Louisiana. 2. That the statute and the provision, as they were construed and applied to the circumstances of this case, are in violation of the tenth section of the first article of the Constitution of the United States.

Error to the Supreme Court of the State of Louisiana. The facts are stated in the opinion of the court.

Mr. *Edwin T. Merrick* and *Mr. George W. Race* for the plaintiff in error.

*Mr. Henry C. Miller,* contra.

Mr. Justice Bradley delivered the opinion of the court.

This case comes before us for the purpose of reviewing the judgment of the Supreme Court of the State of Louisiana, which sustained the validity of a certain tax imposed by the authorities of the city of New Orleans upon the property of the plaintiff in error, the "St. Anna's Asylum for the relief of destitute females and helpless children of all religious denominations," a charitable institution which was incorporated by an act of the legislature of Louisiana, approved April 29, 1853, for the purposes indicated by its name. The charter gave it perpetual succession and power to take, purchase, possess, and enjoy all kinds of property whatever, real or personal, by gift, grant, sale, bequest, exchange, or by any other mode of conveyance or transfer whatsoever, and the same to sell, convey, or dispose of under the restrictions therein provided, and directed that it should administer the same for the furtherance of the object of the incorporation and in accordance with the conditions of the charter; with a provision, that all acceptances of immovable property, and all alienations of immovable property and stocks, should be signed by the president and treasurer, after the declared will of a majority of the board of directors had been duly inscribed on the minutes of the corporation. It appointed a first board of directors, and provided for annual elections thereafter, and for the appointment of a president and other officers, and declared that the president and directors should superintend, manage, and control the affairs and interests of the corporation.

The sixth section declared as follows: —

"Sect. 6. *Be it further enacted, &c.*, that the said corporation shall enjoy the same exemption from taxation as was enacted in favor of the 'Orphan Boys' Asylum of New Orleans' by the act approved March 12, 1836, entitled, 'An Act for the relief of the Orphan Boys' Asylum of New Orleans.'"

The act relating to the "Orphan Boys' Asylum of New Orleans," referred to in this section, declared as follows: —

"That from and after the passage of this act all the property, real and personal, belonging to the Orphan Boys' Asylum of New Orleans be and the same is hereby exempted from all taxation either by the State, parish, or city in which it is situated, any law to the contrary notwithstanding."

The proofs show that under the charter thus granted the corporation was duly organized, and, by means of donations, erected an asylum, and has always fulfilled the objects of its organization. The property on which the tax in question was imposed was procured in 1874, and was assessed in the tax-list at $90,000. The following admission with regard to it appears in the record: —

"Now, therefore, it is admitted (as was done in the lower court) that the defendant acquired said cotton-press mentioned in the tax-bill and answer filed by defendant, after 1874, by devise, bequest, and legacy, from Dr. W. N. Mercer, and that they were the owners of the same when said assessment of $1,350 of city taxes was made by the city. That no inmates of the asylum are kept upon the premises, and that the revenues of the cotton-press on which said assessment is made are applied to the keeping and maintaining the objects of charity mentioned in the defendant's act of incorporation, viz. to the support and maintenance and relief of destitute females and helpless children of all religious denominations, as intended by the charter, and that said asylum is, and has been since its organization, in active and efficient operation (as shown by the evidence) in the city of New Orleans."

The proofs further show that the corporation largely relies on the rents of this property for enabling it to carry on its benevolent work.

The tax in question was imposed in 1876 under the supposed authority of the Constitution of 1868, and legislation adopted in pursuance thereof. Article 118 of that Constitution declared as follows: "Taxation shall be equal and uniform throughout the State. All property shall be taxed in proportion to its value, to be ascertained as directed by law. The General Assembly shall have power to exempt from taxation property actually used for church, school, or charitable purposes."

In conformity with this provision the legislature of Louis-
iana, in 1871, passed a law delaring that all taxes levied by
the city of New Orleans shall be assessed equally upon every
description of property, both real and personal; but, by an-
other act, passed at the same session, it was declared that
public hospitals, asylums, poor-houses, and all other charitable
institutions for the relief of indigent and afflicted persons, and
the lots of ground appurtenant thereto and used therewith,
and all their furniture and equipments, so long as the same
shall be used for that purpose only, shall be exempt from
taxation.

The corporation resisted the payment of the tax, and the
usual proceedings for its collection were instituted in the Third
District Court for the Parish of Orleans. The corporation
filed an answer setting up the exemption from taxes contained
in its charter, and claiming that it was a contract, and con-
tended that the Constitution of 1868, and the statute passed
in pursuance thereof, impaired the obligation of said contract,
in violation of the tenth section of the first article of the Con-
stitution of the United States. The court below gave judg-
ment in favor of the city, and an appeal was taken to the
Supreme Court of Louisiana, and the judgment was affirmed.
We are now called upon to review this decision.

The language of the exemption is so explicit and so broad,
and comes in after so many allusions to property which it is
supposed the corporation might acquire, other than that which
would be directly used for food and shelter to the destitute
and helpless persons under its care, that no doubt can be
entertained as to its literal application to all the property of
the society which it would be lawful and proper for it to
possess. The funds on which it relies for carrying on its
work, however invested, whether in stocks, real estate, or
otherwise, no less than the asylum building itself, are clearly
embraced in the terms of the exemption; and to exclude
them from its operation would require the insertion or addition
of words which the legislature did not see fit to express.
Undoubtedly, if the corporation should acquire property not
needed or used for carrying on the institution, it would be an
act outside of the objects and purposes of the charter, and

*ultra vires;* and, as to such property, it could not, in its own wrong, justly claim the benefit of the exemption. But the property in question is not obnoxious to this objection; it directly contributes to the support of the institution, and is held for that purpose alone.

Indeed, it is not on any assumption that the language of the exemption does not extend to the property taxed that the Supreme Court of Louisiana bases its judgment. The main ground upon which it relies is, that the charter was granted and accepted under a standing law of the State, by which the legislature was authorized to abrogate the charter of any corporation; and it was argued that the power to abrogate included the lesser power to alter and amend. This law is contained in article 438 of the Civil Code adopted in 1825, being a modification of a similar article in the Code of 1808, book i. tit. 10, c. 3. In the Code of 1825 it reads as follows: —

"Chapter III. *Of the dissolution of corporations.* (Art. 438.) A corporation legally established may be dissolved: 1. By an act of the legislature, if they deem it necessary or convenient to the public interest; provided that when an act of incorporation imports a contract, on the faith of which individuals have advanced money or engaged their property, it cannot be repealed without providing for the reimbursement of the advances made, or making full indemnity to such individuals; 2. By the forfeiture of their charter, when the corporations abuse their privileges, or refuse to accomplish the conditions on which such privileges were granted," &c.

The counsel for the plaintiff-in-error contends that this article has reference only to the absolute dissolution of a corporation and not to a mere alteration of its charter; and, from its correlation to other parts of the title, this seems to be a very probable view of its office. But if it be construed in the large sense contended for by the counsel of the city, the qualification with which it is accompanied in the proviso is very important and not to be ignored. This qualification requires reimbursement or indemnity to those who have made advances upon the faith of the charter of incorporation. Nothing of the kind has been attempted in this case. As the corporation has not been dissolved, but is continued in existence, and still

represents those who contributed to its establishment, the corporation itself is the only proper party to receive indemnity; and no indemnity short of the amount of the tax imposed would be adequate. The indemnity and the tax would mutually balance or neutralize each other. In other words, proper indemnity would require a revocation or nullity of the tax.

It is suggested, however, by the Supreme Court, in its opinion, that the reserved power contained in the code has no application to this case, because the property upon which the tax in question was imposed was acquired by gratuitous donation after the adoption of the Constitution of 1868, and consequently (as the court infers) after the repeal of so much of the charter as exempted from taxation the property not employed within the limits of exemption allowed by that Constitution. " When a case of prior acquired property," says the court, " presents itself, it will be time enough to express our opinion thereon." But this argument presupposes the existence of a right to repeal the provisions of the charter as to future acquisitions, without qualification or condition. This seems to us a begging of the question at issue. The contract did not apply only to property in existence when the charter was granted, nor only to that which was in existence when the Constitution of 1868 was adopted, but to all that might afterwards be acquired in the due fulfilment of the purposes of the institution. If the present asylum should be destroyed, and a new one erected on a different piece of ground, the argument of the court would be equally applicable to such newly acquired property as to the property in question. The Constitution itself did not exempt any property. It only gave the legislature the power (to be exercised, or not, in its discretion) to exempt property actually used for church, school, and charitable purposes. The legislature has seen fit to make this exemption; but it was not obliged by the Constitution to do so. The argument of the Supreme Court would go to the extent of declaring that the abrogation of the contract, effected by the Constitution of 1868, was valid as to all after-acquired property, whether indemnity was provided or not; and this amounts to saying that the legislature or people of Louisiana

had absolute power to pass a law impairing the obligation of the contract, without any condition or qualification whatsoever.

We cannot concur in this view. We think that the power of abrogation, or alteration, was qualified by the duty of providing indemnity to the full extent of the damage or burden caused by such change. This conclusion seems to us so obvious as to require no extended argument in its support.

This opinion might be extended by an examination of authorities. We might refer to *Home of the Friendless* v. *Rouse* (8 Wall. 430), which is almost on all-fours with the present case. We might go back to the case of *Dartmouth College* v. *Woodward*, and the cases since decided, and review all the reasons on which they were grounded; we might dilate on the legislative reasons for granting immunity from taxes to such charitable institutions as that of the plaintiff in error, prominent among which would doubtless be the fact that the support and maintenance extended to the objects of the charity relieves the State from a burden which would involve a much larger amount of taxation than that which it waives by granting the exemption. But such a review would be but a repetition of what has been said before, and much of it would be out of place.

It is proper, however, that we should notice one or two cases which the counsel for the city suppose to be favorable to their views, and on which they place considerable reliance. These are *Tucker* v. *Ferguson*, 22 Wall. 527, and *West Wisconsin Railway Co.* v. *Board of Supervisors*, 93 U. S. 595. We think that they do not apply to the case now under consideration. In the first place, the Constitutions of Michigan and Wisconsin, in which States those cases arose, reserved to their legislatures, respectively, the power to alter, amend, and repeal charters of incorporation. In the next place, in those cases, the exemption granted was held to be gratuitous on the part of the State, no consideration passing therefor from the companies. It was no part of their charters of incorporation, and, therefore, formed no consideration for their acceptance. Whereas, in the present case, the exemption was expressed in the charter itself, and was one of the inducements offered for

its acceptance, and for making donations for the establishment of the institution.

It is also said that, in order to constitute a contract, the grant ought to be clear and free from all ambiguity and doubt, and not susceptible of a different construction. We think it is so in this case. The contract is not a matter of inference or presumption. It is distinctly expressed in the act of incorporation. Indeed, a clearer case could hardly be made. The addition of a declaration, that the exemption given should not be withdrawn, would not have added to its force.

We are well aware of the forcible language which has been used in previous cases in reference to the importance to the State of the governmental function of taxation; the caution that ought to be exercised in maintaining a claimed exemption from taxes; the clearness and certainty which the grant should exhibit. We concur in all that has been said by this court and many State courts on the subject. But where the language is clear, and the intention to grant the exemption apparent, the court has never hesitated to give it force and effect. And, as before said, we think it difficult to conceive a grant more clearly expressed than that in the present case; and unless we are disposed to reverse the previous decisions of this court, we cannot hesitate what judgment we ought to give.

We are of opinion that the imposition of the tax in question, contrary to the express terms of the charter, and without any provision for compensation or indemnity, was not a legitimate exercise of the power of dissolution reserved in the code; and that sect. 118 of the Constitution of 1868, and the legislative act by virtue of which the said tax was imposed, as construed and applied to the circumstances of this case, are in violation of the tenth section of article 1 of the Constitution of the United States.

Our conclusion is that the judgment of the Supreme Court of Louisiana must be reversed, and that the cause be remanded with instructions to reverse the judgment of the Third District Court of the Parish of Orleans, and to render judgment in conformity with this opinion.

*So ordered.*

MR. JUSTICE MILLER, with whom concurred MR. JUSTICE FIELD, dissenting.

I dissent from this judgment, because I understand that no statute shall be held to grant exemption from taxation unless its language imperatively requires it.

I do not think that the language of the statute under which the exemption is claimed in this case requires that all property acquired by the institution after the passage of the act hall be exempted, especially in regard to a cotton-picking machine, which can only be of value as it is used in a business operation in competition with others who must pay heavy taxes.