## WALDEN *v.* KNEVALS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

Submitted April 1, 1885.—Decided April 13, 1885.

The lands granted by Congress to the State of Kansas for the benefit of the St. Joseph & Denver City Railroad Company by the act of July 23, 1866, were not open to sale or settlement after the line or route of the road was "definitely fixed"; which it was when the map of the route adopted by the company was filed with the Secretary of the Interior, and accepted by him. *Van Wyck v. Knevals,* 106 U. S. 360, affirmed.

This was a bill in equity to compel a conveyance of land. Plaintiff below derived title through the grant of lands made by Congress to the State of Kansas, to aid the St. Joseph & Denver City Railroad Company. Defendant below derived title through a patent from the United States granted after the company had filed its maps with the Secretary of the Interior. Decree for plaintiff, from which the defendant below appealed.

*Mr. Delenzo A. Walden,* appellant, in person.

*Mr. J. M. Woolworth* for appellee.

Mr. Justice Field delivered the opinion of the court.

The questions presented in this case are similar to those considered and decided in *Van Wyck v. Knevals,* 106 U. S. 360. By the act of Congress of July 23, 1866, 14 Stat. 210, there

was granted to the State of Kansas, for the use and benefit of the St. Joseph and Denver Railroad Company, in the construction of a railroad from Ellwood in that State to its junction with the Union Pacific Railroad, or a branch thereof, not further west than the 100th meridian of west longitude, every alternate section of land designated by odd numbers, for ten sections in width on each side of the road, to the point of intersection. The grant was accompanied, however, with this qualification—that in case it should appear that the United States had, when the line or route of the road was " definitely fixed," sold any section or part thereof thus granted, or that the right of pre-emption or homestead settlement had attached to the same, or that it had been reserved by the United States for any purpose whatever, then it should be the duty of the Secretary of the Interior to cause an equal quantity of other lands to be selected from the odd sections nearest to those designated, in lieu of the lands thus appropriated. The main question here, as in the case mentioned, is, when was the route of the road to be considered as " definitely fixed," so that the grant attached to the adjoining sections. In the case mentioned we held that the route must be considered as " definitely fixed " when it had ceased to be the subject of change at the volition of the company; that until the map designating the route of the road was filed with the Secretary of the Interior, the company was at liberty to adopt such a route as it might deem best, after an examination of the ground had disclosed the advantages of different routes. But it was held that when the route was adopted by the company, and a map designating it was filed with the Secretary of the Interior, and accepted by that officer, the route was established. In the language of the act it was " definitely fixed," and could not be the subject of further change so as to affect the grant except by legislative consent; and that no further action was required on the part of the company to establish the route. It then became the duty of the Secretary to withdraw the lands granted from market, and the court said: " If he should neglect this duty, the neglect would not impair the rights of the company, however prejudicial it might prove to others. Its rights are not

made dependent upon the issue of the Secretary's order, or upon notice of the withdrawal being given to the local land officers. Congress, which possesses the absolute power of alienation of the public lands, has prescribed the period at which other parties than the grantee named shall have the privilege of acquiring a right to portions of the lands specified, and neither the Secretary, nor any other officer of the Land Department, can extend the period by requiring something to be done subsequently, and until done continuing the right of parties to settle on the lands as previously." 106 U. S. 366. Since the decision of that case, the court, in *Railway Co.* v. *Dunmeyer*, 113 U. S. 629, has reconsidered the question and come to the same conclusion, the receipt of the map in the land office without objection being considered as equivalent to its acceptance.

It appears from the agreed statement of facts that previous to the 21st of March, 1870, the engineers of the railway company surveyed and staked out upon the ground the proposed line of the road, made a topographical map of the country through which the line ran, showing the government surveys and the proposed route with reference to the section lines, and the towns, counties and rivers; that such map was on that day approved by the board of directors, and on the 25th of the same month was filed, together with a certificate of the approval indorsed thereon, with the Secretary of the Interior, who approved the same, and on the 28th of the same month transmitted it to the Commissioner of the General Land Office, with directions to instruct the proper local land officers to withdraw from sale or other disposal all the odd-numbered sections falling within the limits of twenty miles on each side of the line of the route. On the 8th of April following the Commissioner transmitted by mail a copy of the map to the register and receiver of the local land office at Beatrice, in Nebraska, but it was not received by them until the 15th of that month. On the 8th of April, 1870, one Clark Irvin entered the lands in question at the land office in Beatrice, and on the 1st of November, 1871, a patent was issued to him. At the time of his entry no instructions had been received from

the Land Department of the Government that the lands were withdrawn from market, and he made his entry without any actual knowledge of the filing of the company's map with the Secretary, or of his order to withdraw the lands from market. Subsequently the company applied to the Land Department for a patent of the lands, and tendered the necessary fees and charges. The application was refused on the ground that Irvin's right of entry had attached to the lands, and a patent for them had been issued to him. The plaintiff deraigned title from the railroad company, and the defendant deraigned title from Irvin, by deed, for which he paid a valuable consideration, without notice of the claim of the plaintiff. It thus appears that the defendant made his entry, and therefore acquired whatever rights he possesses after the map of the company designating its route had been filed with the Secretary of the Interior, March 25, 1870, and the route had thereby become definitely established. The title of the company to the adjoining odd sections was then fixed. No rights could be initiated subsequently which could affect that title. The entry of the defendant being on the 8th of April afterwards created no interest in him, and the patent issued upon that entry passed none.

All other questions presented in this case are fully considered in *Van Wyck v. Knevals*, and we see no ground to change the conclusions then reached. For the reasons there stated the decree of the court below must, therefore, be

*Affirmed.*