WISCONSIN CENTRAL RAILROAD COMPANY, Respondent, vs. PRICE COUNTY and others, Appellants.

*November 9 — December 1, 1885.*

TAXATION: WISCONSIN CENTRAL RAILROAD LAND GRANT. *(1) Forfeiture by failure to complete road. (2) Lands within place limits when earned and taxable. (3) Indemnity lands: Approval of selection by implication: Withholding patents by reason of erroneous construction of judicial decision. (4) Taxes on land valid though not assessed to any one.*

1. Although the granting act required the completion of the road December 31, 1876, and the same was not completed until June, 1877, yet such delay worked no forfeiture of the grant, as there was no action by Congress or in any court, before such completion nor since, declaring such forfeiture.

2. By the location and completion of the road according to all the requirements of the granting act, the plaintiff secured an equitable right to all the lands granted to it; and, upon such completion, such equitable right at once attached to such of the granted lands as were situated within the place limits, including the eleven forties in question, and hence they were properly taxable in 1883.

3. Those portions of the lands in question which were situated within the indemnity limits, having, prior to the assessment complained of, been duly selected by the proper party, and such selections duly certified to by the proper local United States land agents, and also by the governor of the state; and a list of the lands so selected and so certified having been presented to the secretary of the interior, and patents therefor requested; and all fees and charges thereon having been paid, or in effect tendered; and the secretary of the interior having refused to grant such patents on the sole ground that, upon his construction of a prior decision of the supreme court of the United States, the plaintiff had already received patents in excess of the lands granted, but which construction has recently been held by the same court to be unfounded; and there being no claim or pretense that such refusal was made on the ground that any of the lands in question were swamp lands, or lands to which the right of preemption or homestead had attached; or that any of them had been reserved for any other purpose, or sold or disposed of to any other corporation or person; or that any other party was making any claim to any of them; or that the secretary found any fault or made any objection to any of the selections so made and certified; or that there was any other ground for such refusal than the one stated,— it is *held* that such action and non-action of the secretary of the interior in the premises were equivalent to a recognition and acquiescence in the selections so made, certified, and presented to him, and, in effect, an approval and acceptance of the same by implication; and therefore, that the plaintiff's equitable right to the lands so selected, certified, presented, approved, and accepted, thereby specifically attached, and became certain in description, and hence that such lands were properly taxable in 1883.

4. The mere fact that the taxes in question were not assessed to the plaintiff by name, nor to "unknown," is not a valid reason for sustaining the judgment.

APPEAL from the Circuit Court for *Price* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action was commenced April 10, 1884, to set aside the taxes levied and assessed on the lands described in the complaint in the year 1883, and to restrain the defendants from selling the same for the nonpayment of said taxes, on

the ground that none of said lands were liable to taxation; in that year, under the act of Congress of May 5, 1864, and the laws of this state. The answer, in effect, alleges that prior to January 1, 1880, the plaintiff had fully completed its railway, and fully earned the lands in question, and thereby became the equitable owner thereof, and entitled to patents therefor. The cause was tried, and February 18, 1885, the court found, in effect, as matters of fact:

1. That the lands described were all wild, unoccupied, and unimproved, and situated in the town of Worcester, in the defendant county, and were a portion of the lands granted to the state by the third section of the act of Congress of May 5, 1864, for the purpose of constructing what is now the plaintiff's railway.

2. That eleven forties of the lands described were situated within the ten-mile limits of said grant, and all the rest within the indemnity limits, and all in odd-numbered sections.

3. That all of said lands were assessed in said town in 1883, and put into the tax roll, and the amount of tax carried out against each respective piece as stated in the complaint, but were not assessed to the plaintiff by name, nor to any one else, nor to "unknown," and none of the real estate included in the assessment roll for that year was assessed to the owners thereof; that a warrant was attached to said tax roll, and the roll, with said warrant attached, placed in the hands of the town treasurer for collection; that the taxes were unpaid thereon, and the town treasurer returned the same to the county treasurer as delinquent.

4. That February 25, 1884, the plaintiff received a patent from the state of all said lands, and thereby acquired the absolute title in fee to the same; that until then the plaintiff got no title to the lands, and had no right to sell or convey

the same; that until they were segregated and identified, and the grant applied thereto, the grant was a "float."

5. That the plaintiff's right to the lands was in dispute between the state and the United States; that said lands and others were withheld from the state and the plaintiff by the secretary of the interior, and consequently the issuing of patents therefor by the United States delayed; that the plaintiff did not in any manner delay the issuing of patents therefor, but, on the contrary, was diligent and persistent in its efforts to procure said patents from time to time; that the delay in their issue was caused entirely by the government of the United States and the general land office, against the protest of both the plaintiff and the state, and in spite of continued and unintermitted efforts made by both the plaintiff and state to obtain their issue by the interior department.

6. That the lands described had, at the time the taxes were levied and assessed thereon in 1883, been selected as lands to which said land grant applied, but said selections had not been approved by the secretary of the interior, and had not been certified to the state, and had not in any manner been identified as the lands upon which the plaintiff would eventually receive patents, but, on the contrary, the secretary of the interior had refused to recognize the right of the state to the lands, or to approve the selections so made.

7. That all the material allegations of the complaint were true.

As conclusions of law the court found, in effect:

1. That it was not the intent and meaning of the act of Congress that said lands should be subject to taxation until they had been earned by the plaintiff and patented by the United States; that while these lands had been in truth earned by the plaintiff before the lands were assessed for

taxation, yet the plaintiff's right to the same and patents therefor had been denied by the secretary of the interior; that the plaintiff could not exercise control over them until it should be determined whether it was entitled to receive patents for them as part of the lands granted.

2. That said lands were a "float" as long as the plaintiff's right thereto was not admitted and recognized by the secretary of the interior, but denied and disputed by him, and patents therefor withheld by him against the will and request of the plaintiff; and hence during such time the lands were not subject to taxation by the state.

3. That said lands were not subject to taxation in 1883, and that the taxes levied and assessed thereon for that year were and are illegal and void, and should be set aside for the reason that said lands were exempt from taxation during that year.

4. That said tax was a cloud upon the plaintiff's title to said lands, and it was therefore entitled to prevail and to the relief prayed for in the complaint.

Upon such findings judgment in favor of the plaintiff, perpetually restraining the defendants from collecting said taxes, was entered, and from that judgment the defendants appeal.

For the appellant there were briefs by *Willis Hand, M. Barry*, and *A. R. Mead*, and oral argument by *Mr. Hand* and *Mr. Barry*.

For the respondent there was a brief by *D. S. Wegg* and *T. L. Kennan*, attorneys, and *E. H. Abbot*, of counsel, and oral argument by *Mr. Wegg* and *Mr. Kennan*. They contended, *inter alia*, that while patents were being withheld by the general government and the right to have the lands was denied, the lands were not subject to taxation. *Railway Co. v. McShane*, 22 Wall. 444; *Railway Co. v. Prescott*, 16 id. 603. The lands could not be taxed under state laws until the specific tracts had been by some act of the govern-

ment segregated from the body of public lands and at least an equitable title thereto vested in the grantee. *Whitney v. Gunderson*, 31 Wis. 359. The government always claims for itself the privilege of determining what lands it has granted; and until that fact is so determined the lands would not be subject to taxation. *Schulenberg v. Harriman*, 21 Wall. 62. Indemnity lands remain a "float," notwithstanding the location of the railroad, until they are chosen at the instance and under the supervision of the secretary of the interior. *Missouri, K. & T. R. Co. v. Noyes*, 25 Kan. 340; *Atchison, T. & S. F. R. Co. v. Rockwood*, id. 292; *Grinnell v. Railroad Co.* 103 U. S. 742; *Cedar Rapids & M. R. Co. v. Herring*, 110 id. 38; *Ryan v. Railroad Co.* 99 id. 382. If the title to these lands at the time they were assessed was in the United States, or held by the state in trust for the United States, they were not liable to assessment and taxation, and the doctrine of relation does not apply. *Calder v. Keegan*, 30 Wis. 126; *Tucker v. Ferguson*, 22 Wall. 572. The land grant act provides that the company should have no right to sell and dispose of the lands until it received patents, and it had no right to receive patents until the selections were made and duly approved by the secretary of the interior. The state therefore had no right to tax the lands and sell them for taxes, because the state could not sell any greater interest in the lands than the railroad company had. If the United States had any interest or any right to withhold the title, it could not be deprived of that right by state legislation. See *Denniston v. Unknown Owners*, 29 Wis. 351. The state of Iowa had a similar land grant, and it was held by the supreme court of that state that the lands were not subject to taxation until the patent issued. *McGregor & M. R. Co. v. Brown*, 39 Iowa, 655; *Cedar Rapids & M. R. Co. v. Woodbury Co.* 29 id. 247. As long as the claim of the plaintiff to the lands was not recognized by the proper officers of the government,

the lands could not be taxed. *Doe v. Iowa R. L. Co.* 54 Iowa, 657; *Cent. Pac. R. Co. v. Howard*, 52 Cal. 227; *Grant v. Iowa R. L. Co.* 54 Iowa, 673; *Dickerson v. Yetzer*, 53 id. 681; *Litchfield v. Webster Co.* 101 U. S. 773; *Iowa R. L. Co. v. Story Co.* 36 Iowa, 48; *Sioux City & St. P. R. Co. v. Osceola Co.* 50 id. 177.

CASSODAY, J.   By the act of Congress of May 5, 1864, certain lands were granted to the state to aid in the building of three separate lines of railway.   13 Stats. at Large, 66, ch. 80.   The third section granted lands to the state in aid of what is now the plaintiff's line of road.   The language of the section is in effect "that there be and is hereby granted to the state of Wisconsin, for the purpose of aiding in the construction" of said line of road, "every alternate section of public land designated by odd numbers, for ten sections in width on each side of said road. . . . But in case it shall appear that the United States have, when the line or route of said road is definitely fixed, sold, reserved, or otherwise disposed of any sections or parts thereof, granted as aforesaid, or that the right of preemption or homestead has attached to the same, that it shall be lawful for any agent or agents of said state, appointed by the governor thereof, to select, subject to the approval of the secretary of the interior, from the lands of the United States, nearest to the tier of sections above specified, as much public land in alternate sections, or parts of sections, as shall be equal to such lands as the United States have sold or otherwise appropriated, or to which the right of preemption or homestead has attached as aforesaid, which lands (thus selected in lieu, etc.) shall be held by said state, or by the company to which she may transfer the same, for the use and purposes aforesaid."   Sec. 7 provided, in effect, "that whenever the companies to which this grant is made, or to which the same may be transferred, shall have com-

pleted twenty consecutive miles of any portion of said railroads, . . . patents shall issue, conveying the right and title to said lands to the said company entitled thereto, on each side of the road, so far as the same is completed, and coterminous with said completed section, not exceeding the amount aforesaid, and patents shall in like manner issue as each twenty miles of said road is completed: *provided*, however, that no patents shall issue for any of said lands unless there shall be presented to the secretary of the interior a statement, verified on oath or affirmation by the president of said company, and certified by the governor, . . . that such twenty miles have been completed in the manner required by this act." Sec. 8 provided, in effect, "that the said lands hereby granted shall, when patented as provided in section seven of this act, be subject to the disposal of the companies respectively entitled thereto, for the purposes aforesaid, and no other." Sec. 9 provided, in effect, "that if said road . . . is not completed within ten years from the time of the passage of this act, as provided therein, no further patents shall be issued to said company for said lands, and no further sale shall be made, and the lands unsold shall revert to the United States." That act was explained and enlarged by a resolution of Congress approved June 21, 1866. 14 U. S. Stats. at Large, 360. By an act of Congress approved April 9, 1874, the time for the completion of the road, without reversion, was extended to December 31, 1876. 18 Stats. at Large, 28, ch. 82.

It is undisputed that all the lands covered by sec. 3 of the act of Congress of May 5, 1864, were, by several acts of the legislature of this state, granted to the predecessors of the plaintiff and finally to the plaintiff, substantially upon the same terms and conditions named in the acts of Congress. Among the conditions so imposed by the state was one to the effect that the title to the lands should not vest in the company sooner or faster than the lands might be

sold, as provided and declared in the aforesaid act of Congress; but declared, in effect, that the company should be capable in law of taking and holding any land so granted which should be conveyed to it by such grant, or deed, or *by the operation of law*, and might also mortgage, or pledge, or otherwise dispose of all their right, title, interest, or claim therein of which it might be seized at the time of the execution of such mortgage, or which it might acquire subsequently thereto. Secs. 8, 11, ch. 314, P. & L. Laws of 1866; secs. 9, 12, ch. 362, P. & L. Laws of 1866, as amended by ch. 6, Laws of 1875. By a subsequent act it was declared, in effect, that whenever any railroad company in this state, holding grants of land to aid in its construction, had or should finish its said railroad, or. any section thereof, and the same should be certified to the secretary of the interior by the governor as completed in compliance with the several acts and resolutions of Congress and the acts of the legislature of this state, and lists of said lands should be certified by the secretary of the interior to the state for such company, the governor was thereby authorized and directed to convey the same by deeds to such company, which deeds, when so issued, should be *prima facie* evidence of title in all the courts, and inure to the benefit of the company, or its assigns, and all persons claiming under it. Ch. 381, Laws of 1876.

It is admitted that the plaintiff fully completed its road in compliance with all the requirements of the act of Congress and the legislature as early as in June, 1877. The mere fact that the road was not fully completed before December 31, 1876, did not work a forfeiture of the grant. That could only be done by direct action by Congress or direct proceedings in court for that purpose before such completion. *Schulenburg v. Harriman*, 21 Wall. 62–4; *Van Wyck v. Knevals*, 106 U. S. 368, 369. No such action has ever been taken by Congress, nor in any court. It is also

admitted that a statement thereof, verified by the oath of
the president of the company, and certified to by the gov-
ernor, was upon such completion, and during the year 1877,
presented to the secretary of the interior.  It is also con-
ceded, and virtually found by the court, that prior to 1880
the plaintiff had duly selected the lands claimed by it under
the grant, including all the lands in question; that such
selections had been duly certified to by the United States
land agents of the respective districts where the lands were
situated, and also by the governor of the state, and a list of
the lands so selected and so certified, including all the lands
in question, had been presented to the secretary of the in-
terior, and patents therefor been requested, but that the
secretary had refused to issue or allow such patents to be
issued.  It also appears from a letter addressed to the sec-
retary of the interior under date of November 16, 1877, by
the commissioner of the general land office at Washington,
in the record before us, submitting list No. 8 of selections
by the plaintiff for his approval, that it then appeared from
the records in his office that out of the odd-numbered sec-
tions within the ten-mile limits of said road the United
States had, prior to the passage of the land grant of May 5,
1864, disposed of 789,622 acres; and after the passage of
the act, and prior to the definite location of the line, the
United States had disposed of 161,695.53 acres more; that
according to the practice of that office prior to the date of
that letter the plaintiff was entitled to lands from the in-
demnity limits in lieu of those disposed of prior to the pas-
sage of the act, as well as those disposed of after the passage
of the act; but that it appeared from the decision of the
supreme court of the United States in the case of *Leaven-
worth, L. & G. R. Co. v. U. S.* 92 U. S. 733, then recently
published, that such practice of that office had been errone-
ous, and that indemnity could only be allowed for lands sold
or disposed of by the United States after the passage of the

granting act; and that, applying that rule to the grant in question, the plaintiff had already received patents for 41,820 acres in excess of the indemnity authorized by the granting act.

In response to that letter, the secretary of the interior, under date of December 26, 1877, sanctions the commissioner's version of that decision, and quotes at length from the opinion of Mr. Justice Davis in behalf of the majority of the court in that case, and concludes by instructing the commissioner, by reason of that decision, not to issue any further patents to the plaintiff, and to call upon it to relinquish its claims to the lands so patented in excess of what it was entitled to under the grant by such construction. From the decision of the majority of the court in the case just cited Mr. Justice Field delivered a dissenting opinion, concurred in by Justices Swayne and Strong. Such refusal of Mr. Schurz, the then secretary of the interior, to issue any further patents to the plaintiff or to the state, by reason of the construction thus given to the granting act, was frequently repeated and continued during his term of office; and the same ruling and construction were sanctioned and followed by his successor, Mr. Secretary Teller. None of these refusals were put upon any other ground than the one mentioned. There is no claim that any secretary of the interior ever refused to issue any of such patents by reason of any of the lands in question being swamp lands, or lands to which the right of preemption or homestead had attached, or that any of them had been reserved for any other purpose, or sold, or disposed of to any other corporation or person; or that any other party was making any claim to the lands, or any of them; or that there was any other ground for refusing such patents, except as stated. Such being the facts, we must conclude that neither of the secretaries found any fault with the selections made and certified; but, on the contrary, that they each recognized and

acquiesced in such selections, and would have issued such patents but for the reasons given.

Since the decision of this case by the trial court, the supreme court of the United States has announced its decision in *Winona & St. P. R. Co. v. Barney*, 113 U. S. 618. In that case the court was unanimous, and the opinion by Mr. Justice Field refers to the case of *Leavenworth, L. & G. R. Co. v. U. S.*, *supra*, as follows: "The language (of Mr. Justice Davis) in *Leavenworth, L. & G. R. Co. v. U. S.* 92 U. S. 733, is quoted as sanctioning the position of the appellant. The court, speaking of the indemnity clause in the grant then under consideration, said its purpose was to give sections beyond the limits designated for those lost within it by the action of the government *between the date* of the grant and the *location* of the road. But it did not say that this was its only purpose; and if the *language must be construed* as meaning that, *it was a mere dictum*, not essential to the decision of the case. The question was, what lands could be taken for indemnity, not for what deficiencies indemnity could be had. And it was held that an Indian reservation did not pass by the grant, and could not be taken as indemnity for the lands otherwise lost from it. There was no question before the court for what deficiencies indemnity could be supplied." After giving the reasons for a different construction than the one intimated by Mr. Justice Davis, the learned justice said: "It follows that in our judgment the indemnity clause covers losses from the grant by reason of sales and the attachment of preemption rights *previous to the date of the act*, as well as by reason of sales and the attachment of preemption rights between that date and the final determination of the route of the road."

The language in the act of Congress thus construed by that court, which is the final arbiter of the question, is so nearly identical with the language in the act before us

which we are now considering, that we feel bound by the decision as an authoritative exposition of the law on the subject. From this decision we are forced to the conclusion that each of the learned secretaries of the interior named refused to issue patents for the lands in question solely by reason of a misconception of what the supreme court of the United States had in fact decided some ten years ago in the case mentioned.

Did the mere fact of such refusal, based solely on such erroneous conception of the law, prevent the equitable title to the lands in question from becoming vested in the plaintiff so as to subject them to taxation? The language of the act of Congress was that of a present grant to the state, but with conditions, restrictions, and limitations preventing any title from being vested in the plaintiff, except on performance of such conditions, etc. *Schulenburg v. Harriman*, 21 Wall. 58, 62; *Tucker v. Ferguson*, 22 Wall. 571, 572; *Missouri, K. & T. R. Co. v. Kansas Pac. R. Co.* 97 U. S. 495, 496; *Railroad Co. v. Baldwin*, 103 U. S. 429. Upon the same terms it was granted to the plaintiff by the state. The grant operated as a law as well as a transfer of property to the state, and had such force as the intent of Congress required. *Missouri, K. & T. R. Co. v. Kansas Pac. R. Co.* 97 U. S. 497. After the definite location of the line of the road the equitable right to earn the undisposed of lands became fixed in the plaintiff, and no valid adverse right to any such lands in the place limits could be subsequently acquired. *Van Wyck v. Knevals*, 106 U. S. 360; *Walden v. Knevals*, 114 U. S. 373. Yet, while any of such lands remained unearned, the right of the plaintiff to the same was very much like the right of a vendee of specific lands in an executory contract. *Kansas Pac. R. Co. v. Dunmeyer*, 113 U. S. 641; *Walden v. Knevals, supra.*

The right of the plaintiff to lands earned, but situated in the indemnity limits, and not ascertained nor selected, was

quite similar, but attached to no specified land. *Ryan v. Railroad Co.* 99 U. S. 382; *Cedar Rapids & M. R. Co. v. Herring*, 110 U. S. 38 *et seq.; Kansas Pac. R. Co. v. A., T. & S. F. R. Co.* 112 U. S. 414. But as to lands within the place limits, which had in fact been earned, and in respect to which all the requisite conditions had been fully complied with, such contract became executed so far as the plaintiff was concerned; and hence it thereby became invested with an equitable right to the lands. *West Wis. R. Co. v. Trempealeau Co.* 35 Wis. 258; *S. C.* affirmed, 93 U. S. 595; *Van Wyck v. Knevals*, 106 U. S. 360; *Grinnell v. Railroad Co.* 103 U. S. 742; *S. C.* 5 Am. & Eng. R. Cas. 447; *Litchfield v. Webster*, 101 U. S. 775; *Cedar Rapids & M. R. R. Co. v. Herring, supra; Walden v. Knevals, supra; Kansas Pac. R. Co. v. A., T. & S. F. R. Co. supra.* The same is true with respect to lands fully earned and duly selected from the indemnity limits, and properly certified to and sanctioned by the requisite state and national authorities. *Ibid.* As soon as the plaintiff had acquired such complete equitable right to any specific lands, the same could not be defeated by the land department at Washington issuing a patent therefor to some other party. *Van Wyck v. Knevals, supra; Walden v. Knevals, supra; Cedar Rapids & M. R. R. Co. v. Herring, supra.*

There can be no doubt but what the plaintiff, prior to 1880, acquired such complete equitable rights to the eleven forties in the place limits. The same is true in respect to the lands selected from the indemnity limits, and certified and presented to the secretary of the interior as stated, unless the mere refusal of the secretary to issue patents therefor on the ground mentioned prevented such equitable rights from vesting in the plaintiff. The requisite fees and charges of the local land offices and the department of the interior seem to have been paid or in effect tendered by the plaintiff. There is no doubt but what the selections were made by the

party designated by the law. True, the act of Congress declared that the selections should be "subject to the approval of the secretary of the interior." No objection having been made by that officer to the selections certified and presented to him as stated, except on the ground mentioned, must be regarded as equivalent to an acceptance by him of such selections, since it now appears that the only objection made was unfounded, and that the plaintiff was then legally entitled to the lands. Thus, it has been held that the receipt of the map definitely fixing the line of a proposed railway in that department without objection, must be "considered as equivalent to its acceptance." 114 U. S. 375.

We are not aware of any decision of the supreme court of the United States, nor of any intimation in any of the opinions of that court, precluding such approval by implication of the selections so made. In one of the cases above cited Mr. Justice MILLER said: "As regards the lands to be selected in lieu of those lost by sale, or otherwise, it may be that no valid right accrues to any particular section, or part of a section, until the selection is made and reported to the land office, and, *possibly*, not then until the selection is approved by the proper officer." 103 U. S. 742. In a later case, above cited, the same learned justice quotes the same language, and adds: "It is not easy to see how rights can be vested in any particular section or sections of the latter class [indemnity lands] until it is ascertained how many of the original odd-numbered sections are thus lost, and until the grantee has exercised *his right of* selection. . . . They [these latter] are not and cannot be made *specific* until the grantee's right of selection has been exercised." 110 U. S. 38, 39.

These are the strongest expressions of opinion coming from that court we have been able to find. The only objects Congress could have had in requiring the approval of the selections by the secretary of the interior were to insure

selections "from the lands of the United States nearest to the tier of sections" in the place limits, and to avoid, as far as possible, controversies with other adverse claimants, and thus render as certain as possible the description of the lands owned by the company, which might otherwise be less certain. Here the lands were selected, and there is no claim that they were not, "nearest to the tier of sections" in place, nor that there are any adverse claimants to any of the lands, nor that the plaintiff had not the equitable right to all of the lands in question at the time of the levy and assessment of the taxes; but the right of taxation is resisted solely on the ground that, up to the time of bringing this suit, the plaintiff has been unable to procure patents of the lands from the general land office by reason of a mistaken notion as to the effect of a decision once made by the supreme court of the United States many years ago, but which mistaken notion can no longer be entertained in view of the recent utterances of the same court. We must hold that the secretary of the interior did, in effect, approve by implication of the selections made, certified, and presented to him as stated. If we are wrong in this we have the consolation of knowing that the error may be corrected. It is not the United States that is attempting to impose the taxes in question, but the municipal instrumentalities of the state, which conceded the plaintiff's equitable right to the lands. The mere fact that the lands in question were not held under patents from the United States did not prevent their being subject to taxation. *Railway Co. v. McShane*, 22 Wall. 444; *Tucker v. Ferguson*, 22 Wall. 527; *Ross v. Outagamie Co.* 12 Wis. 26; *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 51–56; *Witherspoon v. Duncan*, 4 Wall. 210; *Carroll v. Safford*, 3 How. 441; *S. C.* 44 U. S. S. C. R. 441, and notes; *Thomson v. Pacific R. R.* 9 Wall. 579.

The statutes declare that "taxes shall be levied upon all property in this state, except such as is exempted there-

from. The terms 'real property,' 'real estate,' and 'lands,' when used in this title, shall include, not only the land itself, but all buildings, fixtures, improvements, *rights, and privileges* appertaining thereto. . . . The person holding the *contract or certificate* of sale of any real property *contracted* to be sold by the state, but not conveyed, shall be deemed the owner for such purpose." Secs. 1034, 1035, 1043, R. S. There is no claim that any of the lands in question are exempt by reason of sec. 1038, or any statute of this state. The special exemption given by ch. 21, Laws of 1877, the validity of which was sanctioned by this court, expired before the levy and assessment in question. *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37. In the language of the supreme court of the United States, " Congress has not seen fit, either expressly or by implication, to impose any restriction upon the taxing power of the state. That subject was remitted, as under the circumstances it might well be, wholly to her wisdom and discretion." 22 Wall. 571, 572. In the case last cited it was, in effect, held that " the equitable or inchoate title of the company to the residue of the lands " was capable of being mortgaged, and hence taxed. *Ibid.*

We must hold, upon principle as well as the authorities, that the plaintiff's equitable right to patents for all the lands in question was complete prior to 1883, and hence the equitable title was then fully vested in it so as to subject said lands to taxation in that year. *Ross v. Outagamie Co.* 12 Wis. 26; *Tucker v. Ferguson,* 22 Wall. 527; *Witherspoon v. Duncan,* 4 Wall. 210; *Wheeler v. Merriman,* 30 Minn. 379; *Gulf R. Co. v. Morris,* 13 Kan. 317; *Puget Sound A. Co. v. Pierce Co.* 1 Wash. T. (N. S.) 159; *Cass Co. v. Morrison,* 28 Minn. 257; *S. C.* 5 Am. & Eng. R. Cas. 404; *Cornelius v. Kessel,* 58 Wis. 237; *Fowler v. Scott, ante,* p. 509.

The mere fact that the taxes were not assessed to the plaintiff by name. nor to " unknown," is not a valid reason for

sustaining this judgment. The statute simply requires that "real property shall be entered in the name of the owner, if known to the assessor, otherwise to the occupant thereof, if ascertainable, and otherwise *without any name.*" Sec. 1043, R. S.; *State ex rel. C., M. & St. P. R. Co. v. Blackstone,* 63 Wis. 364.

  *By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.