THE UNITED STATES, APPELLANTS, *v.* ELLEN E. WHITE, ADMINISTRATRIX OF CHARLES WHITE, DECEASED.

Where two persons appear to have conflicting claims to land in California, and the United States do not appear to have any interest in the matter, and the case is brought to this court by proceedings to which the United States are a party, this court will remand the record to the court in California, with directions to allow the contesting parties to proceed in the manner pointed out by the act of Congress passed in 1851.

THIS was an appeal from the District Court of the United States for the northern district of California.

The petition was filed by Charles White, claiming under Manuel Ortega, who gave in evidence the following documents of title, viz:

1. June 12, 1840. A petition of Ortega to the Governor Alvarado for a grant of land called Arroyo de San Antonio, describing its boundaries.

2. June 20, 1840. Reference by the Governor to the military commander of the frontier of Sonoma, to make report.

3. Report of M. G. Vallejo, that the land may be granted.

4. The marginal decree signed by Alvarado, as follows:

MONTEREY, *August* 10, 1840.

In conformity with the information given by the military commander of the frontier of Sonoma, and in virtue of the faculties with which I am invested, I grant to Don Antonio Ortega the land petitioned for, with the understanding that, to expedite the respective title and to regulate the necessary documents by which he shall mark out the lines and perform those necessary acts, he shall make a map, as required by law, which he will present opportunely.

This decree shall be returned to him, that it may serve him as a security during the other operations indicated.

(Signed)                                        ALVARADO.

This title never having been completed by a final grant, the expediente is not to be found among the archives, having been returned to the petitioner to "serve him as a security" in the mean while. But its authenticity is proved by the testimony of the officers, Vallejo and Alvarado, who themselves signed the documents. Their genuineness is therefore not disputed, at least there is no testimony going to impeach the characters of these witnesses.

In order to establish an equity, the claimants examined, first, Ortega himself, who testified that, after the decree made by Alvarado in his favor and in the same year, he applied to Alvarado for a full and formal title; but it was during a recess of the Departmental Assembly, and he could not obtain it. That he presented a diseno or map to the Governor, and went to Oregon, leaving his papers in the private custody of Gov-

ernor Alvarado. A copy of this map is attached. He says he did not occupy the land himself in person; but that Juan Miranda, his father-in-law, occupied it for him, by placing his son there. That Miranda, the father, died in 1845, and his son continued to occupy the land. That he (Ortega) went to Oregon in 1843, and did not return till after the occupancy of California by the Americans. That after his return he went to Alvarado and got his papers for the purpose of establishing his claim, which he conveyed to a priest named Brouillet. As to the custody and delivery of the papers, he is corroborated by Alvarado.

Richardson, another witness, also testified that he knew the land; that it was occupied by virtue of a contract between Ortega and Miranda, and the occupation continued till 1850 by the son of Miranda; that both Ortega and Miranda told him that Miranda occupied the rancho for Ortega; that a house was built; and the land occupied by cattle and horses, and by cultivation.

Vallejo testified as follows:

"It was, I think, about 1838 or 1839 that Ortega applied to me for permission to settle there; and immediately after I gave that permission, he moved on to the land, taking with him his father-in-law, Juan Miranda, and his family; he built a house there and a corral, and stocked the place with horses and cattle; I furnished him with stock to stock the place, and he went on to cultivate a portion of the land; he after that obtained a grant from Governor Alvarado about 1840; Ortega, when he placed his father-in-law on the land, was an officer in the army, and was a portion of the time with his command, and went occasionally to his ranch."

One Jose de la Rosa also testifies that he made the map for Ortega in 1839 or 1840—wrote his petition for him, and saw the grant of Alvarado in his possession on the ranch of San Antonio. That Ortega's wife and family resided on the ranch with her father's family; that Ortega himself left the country, and did not return till 1847; that in 1844 the witness wrote a petition for Miranda for this same land, and presented it to the Governor Micheltorena for him; that a grant to him was

written by one Clark, in the Secretary's office, which was never signed, on account of civil disturbances.

A witness named Martin was called by the attorney for the United States, who swore that he occupied this land in 1832 by license from General Vittoria, and had "a loan of the land;" that he continued such possession till 1837; built a house and cultivated the land; that he delivered possession of the land to Miranda, and removed his house to another tract; that Miranda took possession by putting his son on the land, with cattle, &c.; that Ortega was married, in 1838, to Miranda's daughter; that he had delivered the possession to Miranda *before that time;* that Miranda's son continued the possession till he was sold out by the sheriff.

Mesa, who lived in the family of Miranda at the time this land was occupied, swears that it was claimed and occupied by Miranda, who had been working in the mission for some years; that the cattle were given to him in pay for his labor, and branded with Miranda's brand; that Miranda occupied it, with the consent of Vallejo, for the purpose of applying to the Government for a title; that Ortega was poor, and had no property but a horse. This witness is also confirmed by the testimony of Francesca Miranda, the wife of Ortega, and whom he had forsaken when he went to Oregon.

The expediente of Miranda is found among the archives. It commences with a petition in February, 1844, by Miranda, representing that for more than four years he had been in possession of a place in the Arroyo San Antonio, which had been granted to him by Vallejo, but that the papers were lost. The informe is in due form; the grant drawn out, but not signed.

The board of commissioners adjudged that the claim of the petitioner was valid, and decreed that it should be confirmed.

The District Court affirmed this decree, and the United States appealed to this court.

It was argued by *Mr. Black* (Attorney General) and *Mr. Crittenden* for the United States, and by *Mr. Cushing* and *Mr. Phillips* for the appellee.

The arguments in the case involved the title of Miranda as contradictory to the title of Ortega, and, under the opinion of the court, it is deemed proper to omit them.

Mr. Justice GRIER delivered the opinion of the court.

It is clear, from the evidence in this case, that, as against the United States, either Ortega or Miranda has a just claim to a confirmation of his title to the tract in dispute. But whether Ortega was landlord, and Miranda his tenant, or which of the claimants has attempted to overreach the other, are questions in which the Government has no interest. The United States officers are not bound to settle this dispute between these parties in these proceedings. Nor should either party be permitted to carry on their litigation, by assuming to act for the Government, and thus take the advantage of their opponents, by fighting under its shield and at its expense. The District Attorney of California had neither interest nor authority to represent Miranda in order to defeat Ortega; nor can this court be thus compelled, on an appeal by the Attorney General, to become the arbiters of disputes in which the Government has no concern.

The patent issued in pursuance of the act of Congress which authorizes these proceedings, is conclusive only between the United States and the claimants. It does not affect the interest of third parties.

The act of Congress (3d March, 1851, section 13) points out the mode in which contesting claimants may litigate their respective rights to a patent from the Government.

Instead of an appeal to this court to settle the rights of Miranda in a proceeding in which he is no party, the claimants under him, if there be any, should proceed in the mode pointed out by the act, which provides: "That if the title of the claimant to such lands shall be contested by any other person, it shall and may be lawful for such person to present a petition to the district judge of the United States for the district in which the lands are situated, plainly and distinctly setting forth his title thereto, and praying the said judge to hear and determine the same; a copy of which petition shall

be served upon the adverse party, thirty days before the time appointed for hearing the same. And it shall and may be lawful for the district judge, upon the hearing of such petition, to grant an injunction to restrain the party at whose instance the claim to the said lands has been confirmed, from suing out a patent for the same until the title thereto shall have been finally decided; a copy of which order shall be transmitted to the Commissioner of the General Land Office; and thereupon no patent shall issue until such decision has been made," &c.

It appears from the record that Valentine, who purchased the title of Miranda at sheriff's sale, had filed his claim before the board of commissioners for confirmation, and afterwards withdrew his petition. Now, if Miranda or his assignee makes no claim; if he admits the tenancy, and does not allege that Ortega has fraudulently overreached him, the Government surely has no right to claim that the land shall be considered as part of the public domain. It cannot set up Miranda to defeat Ortega, or the contrary, admitting, as it must, that either of them can show a claim worthy of confirmation in the absence of the other. Nor can third persons be admitted to interfere, to use the claim of one to defeat the other.

If the heirs or assigns of Miranda object to the issuing of the patent to Ortega or his assigns, their remedy is clearly pointed out. They can have their rights tried where the witnesses are known, where they may be examined *ore tenus* before the court, or before a jury, if the court chooses so to order. They have a far better tribunal to settle this question than if they were permitted to appeal to this court, to guess out the truth from conflicting depositions.

Now, if this court should enter a judgment affirming that of the District Court, it would appear as if we had decided the title of Ortega to be superior to that of Miranda, and that Miranda was the tenant of Ortega. This we are unwilling to do; for, if there be bona fide claimants of the Miranda title, such a judgment might seem to conclude them. Nor can we reverse the judgment, for this would imply that we considered Miranda had the better title, and that he or his assignees

might be justified in attempting to get the judgment of this court in their favor, in this oblique and irregular manner, under the protection of the Attorney General.

We have concluded, therefore, to remand the record to the District Court, with directions to suspend further proceedings till the heirs or assigns of Juan Miranda, if they see fit so to do, may have an opportunity to contest the claim under Ortega, according to the provisions of the thirteenth section of the act of 3d March, 1851, entitled "An act to ascertain and settle the private land claims in the State of California," and have such further proceedings as to justice and right may appertain.

And now, to wit, May 1, 1860, the court having reconsidered the opinion and order before made in this case, do now order and adjudge that the decree of the District Court in favor of the appellees be reversed and set aside, and the record remitted for further proceedings in the case.

We do this that the District Court may not be trammelled in their future consideration of the case on all its merits, but without intimating an opinion as to the validity of the grant to Antonio Ortega. It is due to the Attorney General to say that, on the argument of this case, he challenged this grant as fraudulent; and it is because we do not think the whole evidence on that point was fully developed on the former trial below, that this order is made.