THE WISCONSIN CENTRAL RAILROAD COMPANY, Respondent, vs. THE WISCONSIN RIVER LAND COMPANY and another, Appellants.

*February 4 — February 28, 1888.*

*(1) Trust deed: Mortgage.   (2) Ejectment before issuance of patent to plaintiff.   (3) When patent from state takes effect: Delivery. (4) Tax sale: Estoppel.   (5) Notice of tax sale: Proof of posting.   (6, 7) Lis pendens: Purchaser with notice: Statute of limitations: Corporations.*

1. A trust deed of lands, given by a railroad company to secure the payment of bonds and providing that if there should be no default the estate, right, title, and interest of the trustees should cease, determine, and become void, is *held* to be in effect a mortgage and to leave the legal title in the company.

2. Lands granted to the state in trust to aid in the construction of a railroad had been fully earned by the plaintiff company and it was entitled to a patent therefor from the United States. It had also the right to the possession of the lands by virtue of a patent or release from the state, made in pursuance of the original grant and evidencing full compliance with the terms thereof. *Held*, that although the patent from the United States had not been issued, the company might maintain ejectment in the courts of this state against persons making an unlawful claim to the lands under a tax deed fair on its face.

3. The patent or release from the state, made in pursuance of the original grant from the United States, took effect from the time it was signed, sealed, and recorded, although it was not delivered until afterward

The Wisconsin Central R. Co. vs. The Wisconsin River Land Co.

4. In ejectment for lands which were taxed as the property of the plaintiff company and sold for nonpayment of the taxes, the defendants who claim title under such tax sale are estopped from claiming that the plaintiff cannot recover because the patent from the United States has not yet been issued to it.

5. An affidavit by the county treasurer of the posting of the notices of a tax sale, which states that "he did, in accordance with ch. 1130, R. S., post notices in four public places in said county," etc., but does not state when or where such notices were posted, or that any notice was posted in his office, is insufficient.

6. Where a defendant in ejectment conveys the land in controversy pending the suit to one having full knowledge thereof, although no notice of *lis pendens* was filed, such grantee takes subject to the litigation, and can avail himself of no statute of limitations which was not available to such original defendant.

7. The defendant in ejectment conveyed the land to a corporation organized after the commencement of the action and of which he was an incorporator, a stockholder, and the first president. *Held*, that the corporation must be regarded as having received the conveyance with full knowledge of the pendency of the suit.

APPEAL from the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice Cassoday:

This is an action of ejectment to recover about 29,000 acres of land described, and situated in Price county. The summons and complaint were served on the defendant *Comstock* March 1, 1884, and on the defendant land company, which had succeeded to *Comstock's* interest *pendente lite*, January 4, 1887, and which was then made a defendant by order of the court upon the application of the plaintiff.

The *Wisconsin River Land Company* separately answered to the effect (1) that August 9, 1871 the plaintiff had parted with all its right, title, and interest in the lands described, to George T. Bigelow and John Stewart, by trust deed set forth; and, upon the death of Bigelow, to Edwin H. Abbot, as co-trustee with Stewart, by papers set forth; (2) that May 11, 1880, each parcel of land described had been sold to Price county for taxes lawfully assessed thereon for the

year 1879, and a tax certificate issued to the county thereon; (3) that the one-year limitation in sec. 3, ch. 309, Laws of 1880, was a bar to any action to set aside the sale or cancel the certificate; (4) that June 4, 1883, the defendant *Comstock*, being the owner of such certificates, obtained a tax deed thereon from Price county, duly executed, witnessed, acknowledged, and on that day recorded; (5) that March 12, 1885, said *Comstock* conveyed all said lands to the defendant land company, which claimed to own the same in fee; (6) that the plaintiff and said trustees were, before the commencement of this action, barred from maintaining this or any action by chapters 305 and 309, Laws of 1880; (7) that the lands were the same as granted to the plaintiff for the building of its railroad by the acts of Congress and the several acts of the legislature, as stated in the report of *Wis. Cent. R. Co. v. Price Co.* 64 Wis. 579, and in fact for the same lands; that the said railroad was completed as early as June, 1877; that prior to January 1, 1879, said lands in the indemnity limits were "duly selected as required by law and the rules and regulations of the general land-office, and such selections so made, so far as their being proper lands to be selected, were approved by the secretary of the interior; that said company had fully and completely, before the 1st day of January, 1879, performed and completed all the conditions required by said acts and the rules of said land department to entitle it to a patent to said lands, and had fully and completely earned the same, and, at such time last aforesaid, held the equitable title in and to said lands," but that the legal title thereof during all said time and since was in the United States, and hence denied that the plaintiff is or ever was the owner in fee simple of said lands, but admits that he was the equitable owner up to the time of the recording of said tax deed; (8) that February 25, 1884, the governor, under his hand and the great seal of the state, and the secretary of state executed to the plaintiff a release

or patent of all of said lands, and the same was recorded in said secretary of state's office on the day and year last aforesaid; (9) that the action was barred by the limitations prescribed by ch. 50, R. S.

At the close of the trial, the jury, under the direction of the court, returned this verdict: " We, the jury, find for the plaintiff; that it is now, and was at the time of the commencement of this action, the owner of the premises described in the complaint in fee simple; that the defendant wrongfully withholds the possession thereof from the plaintiff, and we assess the damages for the plaintiff, for the wrongful withholding of said premises by the defendant from the plaintiff, in the sum of six cents." Thereupon it was " ordered by the court that the amount for which such lands were sold, and the cost of executing and recording such tax deed, with interest on all such sums at the rate of twenty-five per cent. per annum from the time they were paid until the date of the verdict herein rendered, be set off against the damages awarded to the plaintiff by the verdict, and that the excess the plaintiff, as a condition of judgment, shall pay the same with interest from the date of the verdict within ninety days, and that in default thereof the defendants herein shall have judgment in the action; it having been stipulated that such sum is the sum of $2,540.28, with interest from the date of the verdict."

From the judgment entered in accordance with such verdict and order the defendants appeal.

*W. F. Bailey*, for the appellants.

For the respondent there was a brief by *Charles W. Felker*, and oral argument by *D. S. Wegg* and *Mr. Felker*.

CASSODAY, J. This is an action of ejectment. The plaintiff claims title to the lands as the original owner. The defendant land company claims title under the tax deed of June 4, 1883.

1. It is claimed that the plaintiff parted with whatever title it had to the lands by the trust deed given to Stewart and another, August 9, 1871. That deed is a lengthy document. It recites the purpose for which it was given. It was to secure the payment of bonds to be issued, not exceeding a certain amount per mile of the road, and therein severally designated as a " First *Mortgage* Land Grant and Sinking Fund, Seven Per Cent. Gold Bond, Free of United States Tax, Receivable in Payment for Lands." Each bond was for $1,000, which the plaintiff therein promised to pay to the bearer with interest at seven per cent., payable semiannually. The bonds were to be negotiated and used by the plaintiff in procuring loans with which to build its railroad. The plaintiff was to remain in possession of the road and all the property embraced in such trust deed until there should be a breach in the conditions thereof, and was expressly authorized to contract for the sale of any of such lands at prices to be approved by the trustees; but the proceeds of such sales were to be deposited with the trustees. In case of default, the trustees were, after a certain length of time and in a certain manner, authorized to sell and convey such lands to satisfy the amounts payable. But, in case there should be no default, and the plaintiff should fully perform, then "the estate, right, title, and interest" of such trustees and "their successors in trust" thereby created, was to "cease, determine, and become void." It seems to us that such deed of trust was given as mere security for the money thus obtained, and hence was, in legal effect, nothing more than a mortgage. *Hoyt v. Fass,* 64 Wis. 279. In fact, it is characterized in several places therein as a "mortgage." In this state a mortgage upon land is a mere lien or security. The title remains in the mortgagor, and the mortgagee holds the mortgage as such mere security for the debt. So stringent is this rule that it has often been held by this court that a deed in fee simple absolute, given merely to

secure a debt, with a parol defeasance, is nothing more nor less than a mortgage, leaving the title in the grantor and giving to the grantee a mere security for his debt, to be enforced like an ordinary mortgage. *Schriber v. Le Clair*, 66 Wis. 586. We must hold that the trust deed in question was in legal effect a mortgage, and left whatever right, title, or interest the plaintiff had in the lands in question at the time of giving it, still in the plaintiff, subject, of course, to the lien thereby created. *Bernstein v. Humes*, 71 Ala. 265, 266; *Hoyt v. Fass*, 64 Wis. 279.

2. It is claimed that the plaintiff cannot recover in this action of ejectment by reason of its failure to show title under a patent from the secretary of the interior. It has frequently been held that a plaintiff having a mere equitable title cannot recover in ejectment in the federal courts. *Langdon v. Sherwood*, 124 U. S. 74, and cases there cited. The same court has held "that whenever the question in any court, state or federal, is whether a title to land which had once been the property of the United States has passed, that question must be resolved by the laws of the United States; but that whenever, according to those laws, the title shall have passed, then that property, like all other property in the state, is subject to the state legislation, so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States." *Wilcox v. Jackson*, 13 Pet. 516, 517; *Paige v. Peters*, 70 Wis. 178.

It was in accordance with "the laws of the United States" granting the lands in question to this state in trust for the purposes of building the railroad, as construed by the supreme court of the United States in *Winona & St. P. R. Co. v. Barney*, 113 U. S. 618, that we held these same lands to be taxable. *Wis. Cent. R. Co. v. Price Co.* 64 Wis. 579, 590. After stating the nature of the grant and what was done under it, it was there said: "From this decision we are

forced to the conclusion that each of the learned secretaries of the interior named refused to issue patents for the lands in question solely by reason of a misconception of what the supreme court of the United States had in fact decided some ten years" before in *Leavenworth, L. & G. R. Co. v. U. S.* 92 U. S. 733. The plaintiff, prior to the completion of its road, was there likened to the vendee in an executory contract, and after such completion to a vendee who had fully executed the contract on his part. 64 Wis. 591, 592. It was there said: "There can be no doubt but what the plaintiff, prior to 1880, acquired such complete equitable rights to the eleven forties in the place limits. The same is true in respect to the lands selected from the indemnity limits, and certified and presented to the secretary of the interior as stated, unless the mere refusal of the secretary to issue patents therefor on the ground mentioned prevented such equitable rights from vesting in the plaintiff. . . . True, the act of Congress declared that the selections should be 'subject to the approval of the secretary of the interior.' No objection having been made by that officer to the selections certified and presented to him as stated, except on the ground mentioned, must be regarded as equivalent to an acceptance by him of such selections, since it now appears that the only objection made was unfounded, and that the plaintiff was then legally entitled to the lands." Pages 592, 593. Then after showing that the objects of such selection and approval had in fact been secured, it was said: "We must hold that the secretary of the interior did, in effect, approve by implication of the selections made, certified, and presented to him as stated." It was then held, in effect, that, as the plaintiff had acquired the equitable right to the patents, and hence the equitable title to the lands by operation of law, the lands thereupon became subject to taxation.

It is here stipulated that the facts in this case, respecting

the plaintiff's equitable right to the lands, are substantially as they appear in the report of that case. While it is conceded, as there held, that the lands were only taxable by reason of the plaintiff's ownership, it is nevertheless contended that the plaintiff cannot, in this action of ejectment, controvert the tax title in question, by reason of its want of legal ownership. In other words, it is claimed that such tax title cannot be controverted in ejectment in a state court, upon facts which would preclude such controversy in ejectment in the federal courts, upon the rule and authorities already mentioned. But "the distinction between actions at law and suits in equity, and the forms of all such actions and suits have" never "been abolished" in those courts as they have been in this state, where "there is . . . but one form of action for the enforcement or protection of, private rights and the redress or prevention of private wrongs, which is denominated a civil action." Sec. 2600, R. S. The objection of the defendants, as admitted upon the argument, does not go to the plaintiff's equitable right to the lands, which is conceded, but merely to the *form* of the action; and it may be that it would have been available had the action been brought in the federal court. This is on the ground that " the remedies in the courts of the United States are to be at common law *or* in equity; not according to the practice in the state courts, but according to the principles of the common law and equity, as distinguished and defined in that country from which we derive our knowledge of those principles." *Fenn v. Holme*, 21 How. 485. But the same court has often recognized the right of a plaintiff in ejectment in certain state courts, to recover on the strength of his equitable title merely. Thus it is said on the page last cited: "In some states in the Union no court of chancery exists to administer equitable relief. In some of those states courts of law recognize and enforce in suits at law all equitable rights and claims which a court of

equity would recognize and enforce; in others all relief is denied, and such equitable claims and rights are to be considered as mere nullities at law." *Ibid.* "It is also the settled doctrine of" that "court that no action of ejectment will lie on such an equitable title, notwithstanding a state legislature may have provided otherwise by statute. *The law is only binding on the state courts,* and has no force in the circuit courts of the Union." *Hooper v. Scheimer,* 23 How. 249. This was sanctioned in the recent case of *Langdon v. Sherwood,* 124 U. S. 84. But a mere vendee in an executory contract, entitled to the possession under it, may maintain ejectment even in the federal courts. *Melenthin v. Keith,* 17 Fed. Rep. 583, MILLER, J. In several of the states it has been held, under statutes similar to ours, that an equitable owner, entitled to the immediate possession of the land, could maintain ejectment against a stranger or one unlawfully claiming such right to possession. *Glover v. Stamps,* 73 Ga. 209; *Covert v. Morrison,* 49 Mich. 133; *Pierce v. Felter,* 53 Cal. 18; *Phillips v. Gorham,* 17 N. Y. 270; *Lattin v. McCarty,* 41 N. Y. 107; *Sheehan v. Hamilton,* 4 Abb. Dec. 211; *Murphy v. Loomis,* 26 Hun, 659.

The mere fact that the plaintiff's equitable rights to the lands "must be resolved by the laws of the United States,"— that is to say, were acquired by operation of the law of Congress granting the lands to the state in trust for the building of the plaintiff's railroad,— does not preclude the plaintiff from the remedy given by the state laws in the state courts for obtaining the possession from one making an unlawful claim to the same under a tax deed fair upon its face. It is by statute that such tax deed operates as a constructive eviction of the land-owner. Sec. 1176, R. S.; *Warren v. Putnam,* 63 Wis. 410–417; *Hewitt v. Week,* 59 Wis. 444; *Hewitt v. Butterfield,* 52 Wis. 384. Since such statute operated as a constructive eviction of the plaintiff in favor of the defendants the plaintiff may certainly have

the benefit of the other provision of the statutes to regain the possession which, without legal right, it thus constructively lost.

Under our statutes the complaint in ejectment must "set forth that the plaintiff has an estate or interest in the premises claimed, describing them," and " particularly state the *nature* and extent of such estate or interest, . . . and that he *is entitled to the possession* of such premises, and that the defendant unlawfully withholds the possession thereof from him to his damage," etc.   Sec. 3077, R. S. The statute moreover declares that "it shall not be necessary . . . for the plaintiff to prove an actual entry under title, nor the actual receipt of any profits of the premises demanded, but it shall be sufficient for him to show *a right to the possession of* such premises at the time of the commencement of the action, as heir, devisee, *purchaser, or otherwise.*"   Sec. 3079, R. S.   Here the plaintiff was, in legal contemplation, a "purchaser" of the lands from the state, in consideration of the building and completion of the railroad as required, and the selection and approval of the lands prior to the levy of the taxes in question.   64 Wis. 591, 592.   This court has gone so far as to hold that, under our statutes, the holder of a school-land certificate may maintain ejectment.   Sec. 220, R. S.; *Tobey v. Secor*, 60 Wis. 310.   A person holding a contract or certificate of sale of any real property contracted to be sold by the state but not conveyed, is deemed the owner for the purposes of taxation.   64 Wis. 595; secs. 1034, 1035, 1043, R. S.

Here the plaintiff acquired its right to the possession of the land on the completion of its road, by virtue of a grant from the state made in pursuance of a grant from the United States.   64 Wis. 585–587.   The patent from the governor and secretary of state was *prima facie* evidence that the plaintiff had fully complied with the terms of the grants,

and that, so far as it and the state were concerned, the trust had been fully executed, and hence extinguished. See references, 64 Wis. 587; also sec. 4153, R. S., as amended by ch. 18, Laws of 1880. Such being the nature and purpose of that instrument, it would seem to operate as such *prima facie* evidence the moment it was completed and entered of record, which was before the commencement of this action. It was never intended to operate as the grant of a title, but only as the evidence of a title previously granted. The same would be true respecting patents issued by the secretary of the interior for these lands. 64 Wis. 591, *et seq.* Thus in *U. S. v. Schurz*, 102 U. S. 397, it is said by the court: "We are of opinion that when, upon the decision of the proper office that the citizen has become entitled to a patent for a portion of the public lands, such a patent made out in that office is signed by the president, sealed with the seal of the general land office, countersigned by the recorder of the land office, and duly recorded in the record-book kept for that purpose, it becomes a solemn public act of the government of the United States, and needs no further delivery or other authentication to make it perfect and valid. In such case the title to the land conveyed passes by matter of record to the grantee, and the delivery which is required when a deed is made by a private individual is not necessary to give effect to the granting clause of the instrument." We must hold that the patent from the governor took effect upon completion, and without delivery, as of February 25, 1884.

3. But there is still another reason why the plaintiff should be entitled to maintain such an action. The defendants do not claim under any patent or grant from the United States, but solely under a tax deed issued in pursuance of the statutes of the state. This being so, their only claim to the lands necessarily presupposed title in the plaintiff; otherwise, the lands would not have been taxable,

JANUARY TERM, 1888.     105

The Wisconsin Central R. Co. vs. The Wisconsin River Land Co.

and hence their tax deed would have been a nullity. Their claim, therefore, was not only necessarily dependent upon the plaintiff's title, but also upon a constructive eviction of the plaintiff, or an actual rightful possession under a valid tax deed, or as mere intruders upon the plaintiff's right to possession. That is to say, such claim of title by the defendants is, under our statutes, either derivative from the plaintiff or tortious as against the plaintiff. Such being the relationship of the parties to the lands and hence to each other, it would seem that the defendants are estopped from disclaiming the plaintiff's title and right to possession, except on the theory that such title has been divested and the right to possession acquired by eviction under such tax deed. *Brandirff v. Harrison Co.* 50 Iowa, 164; *Austin v. Bremer Co.* 44 Iowa, 155. This is on the theory that where both parties claim title from a common source, the one having the better claim from that source must prevail. *Hewitt v. Butterfield*, 52 Wis. 384; *McCready v. Lansdale*, 58 Miss. 878; *Hunter v. Starin*, 26 Hun, 529. This rule has recently been applied in California, in a case where the outstanding legal title was in the United States. *Gray v. Dixon*, 16 Pac. Rep. 305. Of course, the plaintiff must recover on the strength of its own title, which was necessarily on trial, but it does not follow that its title is without any strength merely because it is not evidenced by a patent from the general government. Especially is this so as against the defendants, whose only claim of title is based entirely upon a supposed acquisition of the plaintiff's title and right to possession.

4. It is virtually conceded that the tax sales upon which the tax deed in question was issued were void for want of the requisite notice of the same or proof thereof as required by statute. Sec. 1130, R. S., as amended. The only proof or affidavit to be found in the county offices as to the posting of notices was the affidavit of the county treasurer,

sworn to May 15, 1880, to the effect " that he did, in accordance with chapter 1130 of the Revised Statutes, post notices in four public places in said [Price] county, that he would, on the 11th day of May, 1880, sell to the highest bidder so much of each parcel and tract of land on which the taxes of 1879 remain unpaid as would be sufficient to pay the taxes, interest, and charges to the date of sale, a copy of which notice is hereunto attached." When or where such notice was posted does not appear; nor does it appear that any notice thereof was ever posted in the treasurer's office, as required by the statute cited. It is unnecessary to mention other defects. The necessity of record proof of the requisite posting has been too frequently and too recently declared by this court to require repetition. *Ward v. Walters*, 63 Wis. 43; *Ramsay v. Hommel*, 68 Wis. 12; *Morris v. Carmichael*, 68 Wis. 133.

5. The action was commenced, as against *Comstock*, within one year after the execution of the tax deed. There is no claim of any statute of limitations being available as to him. But the defendant land company was not made a party until more than three years after the recording of the tax deed. It answered and pleaded the several statutes of limitation in such cases, and the question arises whether any of them are available in this action. The defect in the tax proceedings mentioned did not go to the validity of the assessment or affect the groundwork of such tax. These things being so, the limitation mentioned in the third section of ch. 309, Laws of 1880, barring an action within one year of the date of the tax sale, has no application to the case. *Urquhart v. Wescott*, 65 Wis. 135; *Pier v. Prouty*, 67 Wis. 218; *Ramsay v. Hommel*, 68 Wis. 12; *Morris v. Carmichael*, 68 Wis. 133.

The question recurs whether the second section of that act, barring the land-owner unless his action is commenced within three years after the recording of such tax deed, is

The Wisconsin Central R. Co. vs. The Wisconsin River Land Co.

available. No *lis pendens* was filed. The mere failure to file notice of *lis pendens*, however, is not such an irregularity as to work a reversal in this case. The object of such notice is to conclude subsequent *bona fide* purchasers or incumbrancers by constructive notice. Sec. 3187, R. S. Here the action was commenced by the service of the summons and complaint upon *Comstock*, the grantee named in the tax deed, March 1, 1884. Subsequently, the defendant land company was incorporated and organized, and *Comstock* was one of its incorporators and stockholders, and its first president, and has continued such ever since. These things being so, the defendant land company must be regarded as having received the conveyance from *Comstock* in 1885 with full knowledge of the pendency of the suit against him, and hence subject to the result of that suit as it then stood. We must hold that where a defendant in ejectment conveys the land in controversy pending the suit to one having full knowledge thereof, such grantee takes subject to the litigation, and can avail himself of no statute of limitations which was not available to such original defendant. Any other rule would work interminable mischief, without being productive of any substantial good.

We find no statute of limitations available to either of the defendants.

*By the Court.*— The judgment of the circuit court is affirmed.