## DUBUQUE NAT. BANK v. WEED et al.

(Circuit Court, W. D. Wisconsin. June 4, 1892.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—WHAT CONSTITUTES.

A deed of a portion of a debtor's realty, and a bill of sale of a portion of his personalty, to the presidents of certain banks, taken with a defeasance back, showing that they were given as collateral security for promissory notes to the banks, do not constitute a voluntary assignment for the benefit of creditors with preferences, under the laws of Wisconsin, in that there is no creation of an active trust.

2. MORTGAGES—WHAT CONSTITUTE—DEFEASANCE.

Such conveyances constitute a mortgage on the properties, and the fact that the defeasance was on a separate paper is immaterial.

3. SAME—MERGER.

Where mortgages were subsequently given to each of the banks on different portions of the same property, for convenience in securing each bank separately, the former conveyances were merged in the subsequent mortgages.

v.57F.no.5—33

In Equity. Bill by the Dubuque National Bank against Alfred Weed & Co., Edwin Ellis, and Thomas Bardon to set aside a deed. Bill dismissed.

Pinney & Sanborn, for complainants.

Tomkins & Merrill, for defendants.

BUNN, District Judge. This is an action brought to set aside a certain deed of land made by the defendants A. Weed & Co. to the defendants Edwin Ellis and Thomas Bardon, dated September 4, 1890, purporting to convey certain lands in Gogebic county, Mich., consisting of a sawmill site known as the "Ramsey Sawmill," belonging to the firm of A. Weed & Co., and to have the complainant subrogated in the place of the grantees named in said conveyance, to the extent of the complainant's claim against A. Weed & Co.

The leading facts, so far as necessary to state them for the proper understanding of the case, are these: The defendants A. Weed & Co., who were a lumbering firm doing business in the north part of Wisconsin and in Michigan, early in September, 1890, became embarrassed, and unable to pay their debts. They owned quite a large amount of property, real and personal, having a mill and mill site, and a logging outfit and stock of logs, at Ramsey, Mich., and another at Ashland, Wis., with logs, lumber, shingles, and various other property, amounting in value to $20,000 or $25,000, exclusive of the property involved in this suit, about $17,500 of which was cash. Their principal home creditors were the First National Bank, the Ashland National Bank, and the Security Savings Bank, all at the city of Ashland, in this state. They owed these banks about $65,000 for cash advanced in the business of lumbering, and for which notes had been given. To secure this large indebtedness, on September 4, 1890, the defendants A. Weed & Co. executed to the defendants Edwin Ellis, the president of the First National Bank, and who was also a director and stockholder in said bank, and one of the principal stockholders in the Security Savings Bank, and Thomas Bardon, who was president of, and a director and stockholder in, the Ashland National Bank, a warranty deed of the Ramsey mill site in Michigan, together with certain bills of sale of personal property, consisting of logs, lumber, lath, shingles, logging outfit, horses, and cattle. At the same time, and as part of the same transaction, Ellis and Bardon gave back to A. Weed & Co. a defeasance in writing, as follows:

"Know all men by these presents, that the bill of sale executed this 4th day of September, A. D. 1890, by A. Weed & Co. to Thomas Bardon and Edwin Ellis, on logs and lumber in Ashland county, and the bill of sale by Alfred Weed and Paul Weed for logs, lumber, lath, and shingles, and horses, cattle, and logging outfit, on same date, said property being in Gogebic county, Michigan, and the deed hereto attached, executed on the same date, and between the same parties, on the sawmill property at Ramsey, Gogebic county, Michigan, on the S. E. ¼ of the N. W. ¼ section 13, town 47 north, range 46 west, N. E. ¼ of S. W. ¼ Sec. 13, town 47 north, of range 46 west, and the assignment of the mortgage from Bay Shore Lumber Company to A. Weed & Company of $12,000, are given as collateral securities for payment of

notes made or indorsed by said Weed & Company, and held by the First National Bank of Ashland, the Ashland National Bank, and the Security Bank, all of Ashland, Wis., to the amount of about $65,000. Witness our hands and seals the 4th day of September, A. D. 1890.

[Signed]                   "Thomas Bardon.    [Seal.]
                                "Edwin Ellis.      [Seal.]

    "In presence of
      "Ida A. Forrest.
      "W. M. Tomkins."

A few days after these conveyances were made, on September 10, 1890, the banks, not being satisfied with the manner of the security taken by Bardon and Ellis, had mortgages executed in form directly to the several banks to secure the same indebtedness. Among these was one executed to the First National Bank of Ashland upon the same real estate, to secure the indebtedness to that bank, amounting to about $51,000.

The contention of the complainant is that the transaction of September 4, 1890, constituted a voluntary assignment of a portion of the defendants' property to Bardon and Ellis as trustees for the benefit of creditors, and that, as it gave a preference to these creditors, and was not, in other respects, in compliance with the statutes of Wisconsin relating to voluntary assignments, the conveyances were void as to creditors. It is further contended that, though void as to creditors, the deed, as between the parties, conveyed the title to the land to Bardon and Ellis; and the complainant seeks to have their title set aside, and to be subrogated in their place, to the extent of the complainant's claim, which is $5,000 and interest. It is claimed by the complainant that the mortgage on the same property, of September 10, 1890, though otherwise admitted to be valid, is in fact void, because the property had already been conveyed to Bardon and Ellis, as trustees, on September 4th, and, there being no reconveyance of the land, there was no title in A. Weed & Co., on the 10th, upon which the mortgage of that date could operate. It must, I think, be confessed that the reasoning by which the complainant is to be put in the place of Bardon and Ellis in respect to their title under the first conveyance is not altogether inartificial in character. Still, the contention may perhaps be supported, if the complainant's main proposition be correct, that the conveyance of September 4th was void as to creditors, as being in violation of the statutes relating to voluntary assignments. But, in the judgment of the court, this contention cannot be maintained. There was no attempt to make a voluntary assignment of the debtors' property to trustees for the benefit of creditors. The essence of the transaction of September 4th was a mortgage upon a particular portion of the defendants' real estate, and mortgages upon certain of the personal property, to secure the debts of certain creditors, which it is admitted were bona fide, and already existing and secured by promissory notes. Bardon and Ellis were not active trustees, and the conveyance with a defeasance back, showing that it was given as collateral security, was a mortgage, to all intents, the same as though it had been in any other form.

The circumstance of the defeasance being upon a separate paper was quite immaterial. In many states that is the most common form of a mortgage. The conveyances were no doubt made in form to Bardon and Ellis because they were the presidents and representatives of these several banks, whose debts the defendants wished to secure, and the real parties in interest were the three banks, in proportion to the amount of their several claims. Except for convenience in securing each bank separately, there was no need to change the security. At the same time it was competent for the parties to do so, and the mortgages taken severally to the banks on September 10th took the place, as was intended, of the mortgages given on the 4th. There was no transfer of title by the deed of September 4th, which required a reconveyance in order to change the form of the security, as would perhaps be the case where an absolute deed is given, not intended as a mortgage. And the giving of the new mortgages in a new form on September 10th —the real estate mortgage to one, and chattel mortgages to the others—merged in that transaction that of September 4th. The original transfer of September 4th, so far as I can judge, had all the qualities and requisites of a mortgage, while it lacked some of the material characteristics of a voluntary assignment, especially in that there was no creation of an active trust, which is recognized as necessary in all the adjudged cases in this state in order to stamp the transaction with the character of a statutory assignment for the benefit of creditors. It was a mortgage of particular property to secure particular creditors, which has ever been held allowable under our law. See Ingram v. Osborn, 70 Wis. 184, 35 N. W. Rep. 304; Cribb v. Hibbard, Spencer, Bartlett & Co., 77 Wis. 199, 46 N. W. Rep. 168. The latest case is Michelstetter v. Weiner, 82 Wis. 298, 52 N. W. Rep. 435. See, also, Wisconsin Cent. Ry. Co. v. Wisconsin River Land Co., 71 Wis. 94, 36 N. W. Rep. 837; Hoyt v. Fass, 64 Wis. 279, 25 N. W. Rep. 45; Schriber v. Le Clair, 66 Wis. 579, 29 N. W. Rep. 570, 889. There will be a decree dismissing the complainant's bill of complaint, with costs.