CHIPPEWA RIVER LAND COMPANY, Respondent, vs. J. L. GATES LAND COMPANY, Appellant.

*February 27—June 18, 1903.*

*Tax deeds: Recording: Indexing: Evidence: Notice of tax sale: Statement of lands to be sold: Filing: Sufficiency: Proof of publication: Tax certificate fee, when may be included in face of certificate: Advertisement, when completed: "Last publication:" Affidavit of printer: Failure to file: Ejectment: Conditional judgment: Statutes.*

1. Under sec. 759, R. S. 1878 (providing that, upon receipt of any instrument, the register of deeds shall *immediately* enter the same upon the general index, "in the order of time in which it was received, the day, hour, and minute of its reception, and the same shall be considered as recorded at the time so noted"), and sec. 758 (providing that it shall be the duty of the register "to indorse upon each instrument or writing received by him for record, his certificate of the time when it was received, specifying the day, hour and minute of reception, and the volume and page where the same is recorded, which shall be evidence of such facts"); and under the presumption of the performance of official duty, nothing appearing to the contrary, a certificate indorsed on an original tax deed,—"Register's Office, Chippewa County. Received for record the 20th day of May, 1889, at 10:15 A. M., and recorded in Vol. 5 of Deeds, on page 252, W. J. Dalton, Register,"—is sufficient proof that the tax deed upon which it is indorsed was indexed in the general index as required by said sec. 759, and hence recorded.

2. Sec. 1130, R. S. 1878, requires the county treasurer on the first Monday in April in each year to make out a statement of all lands on which the taxes remain unpaid, with an accompanying notice of the sale thereof on the third Tuesday of May following, and cause such statement and notice to be published once each week for four successive weeks prior to the day of sale,

and copies thereof to be posted at least four weeks previous to the day of sale in at least four public places in the county. Sec. 1141 requires the county treasurer immediately after sale to deposit with the county clerk all affidavits, notices, and papers relating to the sale, together with a statement showing the lands sold, and to whom, and for what amount. *Held*, in the absence of a specific requirement to that effect, that it was unnecessary to file the original notice in the county clerk's office, and failure so to do is not an irregularity on which a tax deed can be avoided.

3. A notice of a tax sale stated that so much of each tract of land "in the annexed and following statement as may be necessary" will be sold, etc. Attached to the notice was a list or statement of the land to be sold. The affidavit of publication, to which was attached the notice and statement, simply stated that "the notice of which the annexed is a printed copy" was printed, etc. *Held*, that the statement having become an integral part of the notice by apt reference, the affidavit was not insufficient, but must be held to state that the entire notice, which in legal effect included the statement, was published.

4. If, as a matter of fact, lands sold for taxes are sold for twenty-five cents, for each parcel, in excess of the sum authorized by law, the sale is void. Such excess cannot be held trivial or unimportant.

5. In an action to set aside a tax deed it appeared, among other things, that the sum for which the land was sold included the sum returned by the town treasurer, with interest to the day of sale, also the sum of twenty-five cents for an advertising fee, and twenty-five cents additional, and that certificate was issued to the purchaser for the aggregate of said sums, without any additional charge for the certificate fee provided by sec. 1196, R. S. 1878. Sec. 1130, R. S. 1878, required notice of a tax sale to be published four successive weeks, and sec. 1132 required the printer, on penalty of forfeiture of all compensation, to transmit his affidavit of publication within six days after the last publication. It further appeared that the notice of sale was published five times, but that the last insertion was within the last week preceding the tax sale. *Held:*

(1) Since the notice must be published for *four* successive weeks prior to the day of sale, and, if the last four publications are to be reckoned as the legal publications, that the notice was only published three successive weeks, and a fraction over, before the day of sale, the first four publications were the only legal publications of the notice.

(2) That the printer was entitled to no fee for the publication.

(3) That the charge included in the face of the tax certificate of twenty-five cents for advertising fee was illegal, since the county could collect no such fee of the taxpayer unless it was obliged to pay it to the printer.

6. Under sec. 1140, R. S. 1878 (providing the form for tax certificates, showing that the "lands herein described" have been sold, etc.), the certificate may include any number of parcels sold to the same person.

7. Under said sec. 1140 and sec. 1196, R. S. 1878 (providing that the county treasurer shall receive a fee of twenty-five cents for each certificate of sale), if the certificate contain more than one parcel of land, the certificate fee cannot be charged against each parcel as a part of the sum for which the parcel is sold, but only for the certificate *issued*.

9. Under sec. 1132, R. S. 1878, the printer publishing notice of a tax sale must transmit his affidavit of publication of such notice to the county treasurer "within six days after the last publication thereof." *Held*, that the words "last publication" refer to the last issue of the paper in which the notice was legally published, and not to the completed period of publication.

10. Although under sec. 1140, R. S. 1878, providing the form for tax certificates, several parcels sold to the same person may be legally included in the same certificate, where separate certificates are issued to the purchaser on each parcel sold, the inclusion in the face of the certificate of the certificate fee of twenty-five cents is an immaterial irregularity, not prejudicial, and not ground for setting aside the certificate.

11. Under sec. 3087, Stats. 1898 (providing that, in ejectment, when the plaintiff is entitled to recover by reason of a defective tax deed, on which defendant relied, unless the plaintiff shall show that the premises were not liable to taxation, or that such tax had been paid, or that the land had been redeemed, the court shall order plaintiff to pay, as a condition of judgment, *"the amount for which the land was sold,"* the costs of executing the tax deed, and the amount paid by defendant for taxes subsequent to the sale, with interest at fifteen per cent.), the positive requirement must be followed, and it is therefore error not to require the whole sum for which lands were sold to be deposited in court as a condition of relief, although part of that sum is an illegal charge for advertising fees which forms grounds for holding the tax proceedings void.

APPEAL from a judgment of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Reversed.*

This is an action in ejectment to recover possession of

about 4,000 acres of land in Gates and Chippewa counties. The complaint is in statutory form, and the answer claims title in the defendant under tax deeds. Upon the trial the plaintiff introduced in evidence a large number of tax deeds as the basis of its title, to each of which deeds the objection was made that the proof of the recording was insufficient; but the objection was overruled in each case, and exception taken. The defendant thereupon offered in evidence the tax deeds upon which it relies, all of which were issued subsequently to the plaintiff's tax deeds, and the recording thereof was admitted. The plaintiff, in rebuttal, offered in evidence certain records of the tax proceedings upon which defendant's tax deeds were based, claiming that such records showed fatal defects in the proceedings. The court found that the lands in question were, and at all times had been, vacant and unoccupied, and that plaintiff was the owner of said lands, subject to the legal effect to be given to the tax deeds offered by the defendant; that the defendant's tax deeds were void for two reasons: (1) That the sum of twenty-five cents was illegally included in the amount for which each tract of land was sold; (2) that no statement and accompanying notice, as provided by sec. 1130, R. S. 1878, was ever made out by the county treasurer of Chippewa county, and deposited by him in the office of the county clerk of said county, as required by sec. 1141, R. S. 1878. Judgment for the plaintiff was directed on condition that the plaintiff pay into court, for the use of the defendant, the aggregate amount for which the lands were sold to the defendant at the various tax sales (less the sum of twenty-five cents on each parcel), together with the cost of executing and recording said deeds, the amount of subsequent taxes paid by the defendant, and interest on all such sums at the rate of fifteen per cent. per annum, and that in default of such payment the defendant have judgment in the action. Judgment being entered in accordance with these findings, the defendant appeals.

For the appellant there were briefs by *Sturdevant & Clark,* attorneys, and *T. C. Ryan,* of counsel, and oral argument by *L. M. Sturdevant.*

*D. Buchanan, Jr.,* attorney, and *W. F. Bailey,* of counsel, for the respondent.

The following opinion was filed March 21, 1903:

WINSLOW, J.    The tax deeds under which the plaintiff claims title were issued prior to the defendant's tax deeds, and, if they were properly indexed and recorded, it is admitted that the statute of limitations has run in their favor.    The respondent claims, however, that there was no proof that they were indexed as required by sec. 759, R. S. 1878, and hence that they cannot be held to have ever been recorded.    This is the first question to be considered.    A tax deed must have been properly indexed, or it is not deemed to have been recorded; and, until it is so recorded, ejectment cannot be maintained thereon.    *Hewitt v. Week,* 59 Wis. 444, 18 N. W. 417; *Hiles v. Atlee,* 80 Wis. 219, 49 N. W. 816.    The proof on the subject consisted simply of the introduction of the original deeds, each of which had indorsed thereon a certificate substantially as follows:

"Register's Office, Chippewa County.
"Received for record the 20th day of May, 1899, at 10:15 a. m., and recorded in Vol. 5 of Deeds, on page 252.
"W. J. DALTON,
"Register."

Is this certificate sufficient proof, in the absence of any proof to the contrary, that the tax deed upon which it is indorsed was indexed in the general index, as required by sec. 759, R. S. 1878?    We think it is.    The statute nowhere requires that the fact of indexing is to be certified or indorsed upon the deed, but it does require that the entry in the general index shall be made *immediately* upon the receipt of the instrument "in the order of time in which it was received, the day, hour and minute of reception, and the same shall be con-

sidered as recorded at the time so noted." Sec. 759, *supra.*
Sec. 758 provides that it shall be the duty of the register of
deeds "to indorse upon each instrument or writing received
by him for record, his certificate of the time when it was re-
ceived, specifying the day, hour and minute of reception and
the volume and page where the same is recorded, which shall
be evidence of such facts." Now, it is argued that under this
provision the certificate upon the deed is only evidence of
the time of reception of the deed, and of the fact that it has
been recorded at length in a certain book. If it be granted
that this is the proper meaning of the statute, still the result
claimed does not follow. It is made the duty of the register
to index the instrument *immediately* upon its receipt. This
act is the very first act to be done, and must necessarily pre-
cede the recording at length of the instrument. It is a uni-
versal presumption that a public officer performs his duty
as the statute requires; hence when it appears by due cer-
tificate that the register has received the instruments, and re-
corded the same at length in the records, it must necessarily
be presumed that he has performed the duty which the stat-
ute imposes upon him preceding the recording at length,
namely, the duty of making the proper entries in the general
index. This is but a reasonable and fair presumption, and
one which, we think, has been uniformly acted upon by trial
courts without question. If, as matter of fact, the register
of deeds has neglected his duty, and made no entry in the
general index, that fact can be easily shown by proof. Until
the introduction of such proof, the presumption of due per-
formance of official duty arising from the certificate showing
the receipt and recording of the instrument at length must
prevail. This conclusion disposes of the only objection made
to the respondent's title, and makes it necessary to consider
the validity of the appellant's tax deeds. The statute of
limitations not having run upon these deeds at the time of

the commencement of the action, the record of the tax pro-
ceedings was introduced for the purpose of showing alleged
defects therein, rendering the deeds invalid.    These alleged
defects will be considered.

1. Sec. 1130, R. S. 1878, requires the county treasurer on
the first Monday in April in each year to make out a state-
ment of all lands upon which the taxes remain unpaid, with
an accompanying notice of the sale thereof on the third Tues-
day in May following, and cause such statement and notice
to be published once in each week for four successive weeks
prior to the day of sale, and copies thereof to be posted at least
four weeks previous to the day of sale in at least four public
places in the county    Sec. 1141. R. S. 1878, requires the
county treasurer, immediately after the sale, to deposit with
the county clerk all affidavits, notices, and papers relating to
the sale, together with a statement showing the lands sold,
and to whom, and for what amount.    It appears that no
original statement and notice such as is described in sec.
1130, *supra,* was kept by the treasurer or filed in his office,
and this is claimed to be fatal to the validity of the sale.    It
appears, however, that the treasurer in each case made out
a notice substantially as follows:

"State of Wisconsin, County of Chippewa—ss.:

"Notice is hereby given that so much of each tract or parcel
of land in the annexed and following statement as may be
necessary therefor, will, on the third Tuesday of May A. D.
189– being the ——— day of said month and the next succeed-
ing days, be sold by me at public auction at the county treas-
urer's office in the courthouse in the city of Chippewa Falls
in said county of Chippewa for the payment of taxes, interest
and charges due thereon for the year 189–.    Said sale to com-
mence at nine o'clock sharp in the forenoon.

"Dated at the Co. Treasurer's office in the city of Chippewa
Falls in said county of Chippewa, the ——— day of April,
189–.

"HENRY GOETZ,
"Co. Treas."

It also appears that attached to this notice there was a list of the parcels of land to be sold, headed as follows, but not signed by the treasurer:

"Statement of all lands in the county of Chippewa in the state of Wisconsin, except public lands held on contract and lands mortgaged to the state upon which the taxes for the year 189– have been returned as delinquent and which remain unpaid on the first Monday in April, A. D. 189– being the ——— day of said month; that is to say [here follows a statement of the several parcels of land]."

It is claimed by the respondent that this statement and notice is in the nature of a public record, and that, while there is no statute specifically requiring an original to be kept on file in the county treasurer's office, still it is manifestly essential that there should be such an original preserved and on file. We can hardly agree with this contention. The manifest object and purpose of the section is to *give notice* of the sale to the public and to property owners by public advertisement. To hold that, after the notice had been fully given in every respect as required by the law, the sale must be held invalid because the original of the notice had not been kept by the treasurer in his office, would be to sacrifice substance to shadow. The statute simply says that the treasurer shall make out the statement and notice, "and cause *such statement and notice* to be published," and "cause to be posted up copies of such statement and notice." The natural meaning of this would seem to be that the original statement and notice is to be sent to the newspapers for publication. Certain it is that, if the notice and statement be not published, the fact that an original was carefully preserved in the treasurer's office would not save the sale. Again, both the publication and the posting are required to be proven by the filing of affidavits with the treasurer. These affidavits must necessarily contain copies of the notice and statement, so that here are preserved the very notices and statements which are effective. In view of their careful preservation, the filing of an original which

can cut no figure as notice if it differ from the notice published is unimportant, and, in the absence of a specific requirement to that effect, we hold it unnecessary.

2. It is claimed that the affidavits of publication of the notice and statement are insufficient. It appears that the affidavits simply state that "the notice of which the annexed is a printed copy taken from said newspaper has been printed," etc. Attached to the affidavit is a printed copy of the notice and accompanying statement. The contention is that there are two separate papers to be published—a "notice" and a "statement"—and that the affidavits only show the publication of the notice. The argument is not without its force, yet we think it is untenable. As will be seen by reference to the notice itself, the statement is really incorporated into the notice by the terms of the notice. It states that so much of each tract of land "in the annexed and following statement as may be necessary" will be sold. In legal effect, this is equivalent to stating in the notice itself the description of each tract of land which is to be sold. We suppose that, if the statement of parcels were inserted in the body of the notice, it would not be contended by any one that an affidavit which stated that the notice was duly published was insufficient because it did not name the statement specifically. The principle is well settled that one paper may, by apt reference and description, be incorporated into another, and become in legal effect a part thereof. Such we deem to be the case here. The statement became an integral part of the notice by apt reference, and the affidavits in question must be held, in reason, to mean that the entire notice, which, as we have seen, in legal effect includes the statement, was published.

3. The third objection which it seems necessary to consider is, however, far more serious than those which we have already discussed. That objection is that at each of the tax sales the county treasurer sold each parcel of land for fifty cents in excess of the taxes, interest, and charges legally due

thereon at the time of the sale. It was stipulated in the case that the county treasurer's statements show that the sums for which the lands were sold in each case includes the sum returned by the town treasurer, with interest to the day of sale, also the sum of twenty-five cents for an advertising fee, and twenty-five cents additional, and that certificates were issued to purchasers for the aggregate of said sums, without any additional charge for the certificate fee provided for by sec. 1196, R. S. 1878. It is claimed that both of these charges of twenty-five cents are illegal—the first, because the printer was entitled to no fee; and the second, because the certificate fee is no part of the sum for which the lands are authorized to be sold. If, as matter of fact, the parcels were sold for fifty cents, or even twenty-five cents, per parcel, in excess of the sum authorized by law, the sale must be held void. Such an excess cannot be held trivial or unimportant. *Barden v. Columbia Co.* 33 Wis. 447, 14 Am. Rep. 762. It is not denied that the statute provides for a fee of twenty-five cents per parcel for the publication of the notice of sale, which may properly be included in the sum for which the land is sold; but the claim is that no such fee can be charged in this case, because the printer did not transmit to the county treasurer his affidavit of publication within six days after the last publication thereof, and hence, under sec. 1132, R. S. 1878, is not entitled to any fee. If the fact be as claimed, there can be no doubt that the charge is illegal, because the county certainly can collect no such fee of the taxpayer unless it is obliged to pay it to the printer. It appears, without dispute, that none of the affidavits were ever filed with the county treasurer, but were all filed with the county clerk. The respondent's claim, however, is not based on this fact alone. It appears that the notices of sale were all published five times, but that the last publication was within the last week preceding the tax sale. If the fifth publication could be held to be the last legal publication, then the affidavits were filed within

six days from the last publication; but if, on the other hand,
the first four publications are the legal publications, and the
fifth mere surplusage, the affidavits were all filed more than
six days after the last publication. We think it clear that
the first four publications must be held to be the only legal
publications of the notice. The notice must be published
for *four* successive weeks prior to the day of sale. If the last
four publications are to be reckoned as the legal publica-
tions, then the notice was only published three successive
weeks, and a fraction over, before the day of sale. So it ap-
pears that the first four publications must be considered as
the publications authorized by the statute, and hence that
the printer was entitled to no fee for the publication. Were
this otherwise, however, it is impossible to see how the charge
of twenty-five cents additional could be justified. It is said
that this must be presumed to be for a certificate fee. The
statute provides that the county treasurer shall receive a fee
of twenty-five cents for each certificate of sale. R. S. 1878,
sec. 1196. This certificate fee is to be paid by the person to
whom the certificate is issued, and added to the sum for
which the lands were sold, and included in the certificate is-
sued. It is said in support of the course pursued here that,
even if the sum is not to be included in the amount for which
the land is sold, still there is no substantial wrong, because
the certificate fee must be paid upon redemption. The
trouble with this argument, however, is that the law does not
require a certificate fee to be paid for each parcel sold, but
only for each certificate *issued,* and that the statute contem-
plates that one certificate may include any number of parcels
sold to the same person. Reference to sec. 1140, R. S. 1878,
which provides the form for certificates, shows that this is
the case; and such, we think, is the practice in some localities.
Therefore the certificate fee cannot properly be charged
against each parcel as a part of the sum for which the parcel
is sold.

These considerations demonstrate the invalidity of the tax deeds relied upon by the appellant, and the correctness of the judgment.

*By the Court.*—Judgment affirmed.

The appellant moved for a rehearing.
The following opinion was filed June 18, 1903:

WINSLOW, J.   A motion for rehearing is made in this case, and will be briefly considered.

In the former opinion it was held that each parcel of land was sold for an illegal excess of fifty cents, of which twenty-five cents was composed of an authorized printer's fee for publication of the notice of sale, and twenty-five cents for a certificate fee.   The inclusion of the printer's fee was held illegal because the affidavits of publication were not transmitted or filed within six days after the last publication of the notice as required by sec. 1132, Stats. 1898, and consequently the printer was entitled to no fee.   We are strongly urged to reconsider this holding on the ground that the affidavits were in fact filed within the required time.   This claim is based on the contention that the words "last publication," in the section, should be construed as meaning the last completed week of publication, and not the last issuance of the paper containing the notice.   The statute says that the printer shall receive no pay unless the affidavit is transmitted within six days after the "last publication" of the statement and notice.   We cannot agree with appellant's contention.   The purpose of this strict requirement is unquestionably to make it sure that the proof of proper publication shall be in the hands of the treasurer before the sale takes place, and before the filing of all the papers with the county clerk under sec. 1141.   The sale must take place on the third Tuesday in May (Id. sec. 1130), and the publication is to be made for four successive weeks prior to that day.   The full

period of twenty-eight days from the date of the first publica-
tion must expire before the day of sale, and that period may
expire on the day before the sale, but generally expires less
than six days preceding the day of sale. Thus if the affidavit
were not required to be transmitted until six days after the
completed period of twenty-eight days, it would frequently
fail to be in the hands of the treasurer before the sale, and the
treasurer could not transmit it to the clerk with the statement
of the sale and the other papers immediately after the sale,
as he is required to do by sec. 1141. These considerations
seem to us to demonstrate quite conclusively that the words
"last publication," in sec. 1130, should be taken in their nat-
ural and ordinary sense, as referring to the last issue of the
paper in which the statement and notice were legally pub-
lished, and not to the completed period of publication.

As to the certificate fee, however, which was included in
the amount of each sale, we are satisfied that the former rul-
ing should be overruled. While it is certain that the statute
does not contemplate that the certificate fee shall be included
in the sum for which the lands are actually sold, it does pro-
vide that a certificate fee of twenty-five cents shall be added
to the amount of the sale, and paid by the purchaser. Now,
if it be a fact that a separate certificate issues to the pur-
chaser upon each parcel sold, it makes no difference to the
owner whether the fee be included within the amount for
which the lands were sold, or be added to the amount after-
wards. In either event, the owner, upon redemption, will
have to pay the same sum. The former ruling was based on
the fact that the form of certificate prescribed by sec. 1140
shows that several parcels sold to the same person might be
legally included in the same certificate, and in such case there
would only be one certificate fee for perhaps a large number
of parcels. We are convinced, however, that, while this
course is permissible, the natural course is to issue a separate
certificate upon each parcel sold. Such is the more con-

venient course of the county officers and for the certificate holder, because then, in case of redemption of a single parcel, the holder may, under sec. 1168, receive his redemption moneys upon surrender of the certificate covering that particular parcel, and this is undoubtedly the course contemplated upon redemption by the last-named section. Assuming that this is the custom almost, if not quite, universally pursued, we recede from the position taken in the former opinion, and hold that the inclusion of the certificate fee in the sum for which the lands were sold is an immaterial irregularity, not prejudicial, and hence not ground for setting aside the certificate.

Finally our attention is called to the fact that one assignment of error was overlooked in the former opinion. The court made a conditional order for judgment under sec. 3087, Stats. 1898, by which the plaintiff was required to pay into court for the use of the defendant within ninety days the aggregate sum for which the lands were sold, less the sum of twenty-five cents on each sale of each parcel. It is claimed by the appellant that under the section in question the plaintiff should have been required to pay into court the whole sum for which the lands were sold, including the twenty-five cents excess on each parcel. To this the respondent replies that it would be paradoxical to require the plaintiff to pay a sum which could not be legally imposed as a tax. The wording of the statute certainly justifies the appellant's contention. Sec. 3087, Stats. 1898. It provides that the court shall order the plaintiff to pay "*the amount* for which the land was sold," with interest, etc. This section was held constitutional in *Wis. Cent. R. Co. v. Wis. R. L. Co.* 71 Wis. 94, 36 N. W. 837, though the point now urged was not there involved. While there are quite persuasive reasons against the policy of a statute requiring the owner to pay sums in excess of legal taxes as a condition of relief, we have not been able to see that a statute with such requirements is beyond the power of

the legislature to enact. The legislature doubtless could have made the deed conclusive proof, so far as mere irregularities are concerned, of the validity of the sale; and it is difficult to see why, if they may cut off the owner entirely, they may not impose a condition on relief like the present. Ch. 503, Laws of 1852; *Huey v. Van Wie,* 23 Wis. 613. We hold that the positive requirement must be followed, and hence that there was error in not requiring the whole sum for which the lands were sold to be deposited in court as a condition of relief.

*By the Court.*—The motion for a rehearing is denied, without costs. The judgment of affirmance in this court is vacated, the judgment appealed from is reversed, and the action is remanded, with directions to ascertain the additional amount necessary to be deposited by the plaintiff in order to entitle him to judgment, and to fix some reasonable time within which the same may be paid, and upon payment of the same to render judgment for the plaintiff, and in default of such payment to render judgment for the defendant.